Smith *v.* The Comptroller of the State.

---

[659] *Ex parte* SMITH, President of the Pier Proprietors in the city of Albany, *vs.* THE COMPTROLLER OF THE STATE.

The proprietors of the *pier lots* in the city of Albany, are not bound to excavate and keep the bed of the basin in repair, so as that the basin shall at all times be navigable.

MOTION for a *mandamus* to the comptroller, commanding him to issue his warrant to the treasurer to pay to the relator $1591.90, being the balance collected by the state agents and paid into the treasury, as tolls of the Albany basin for 1836. The whole of the collections for that year were $3782.54. Of this, $2190.64, it is admitted, were due to the proprietors. The balance contested was expended by the state, in causing a navigable channel to be opened through the basin, the necessity of which is not disputed. The basin was out of repair and unnavigable. The comptroller, assuming that it was the duty of the pier proprietors to make the repair, after demanding of the relator, then the president and secretary of the proprietors, that they should discharge that duty, caused it to be done at the expense of the state ; and the commissioners of the canal fund directed him to recoup the state out of the funds in its hands. Under that order he retains the balance in question.

*By the Court,* COWEN, J. The right claimed to retain depends on the construction due to various provisions contained in the statutes concerning the basin, in connection with the common law duties of the proprietors, and the rights of the state. The statute of April 5, 1823, (*p.* 128,) after reciting that the basin would be beneficial to the trade of the city, and a great accommodation to carriers on the canal, by cheapening and accelerating trans-shipments between the canal and the Hudson river craft, and that the aid and countenance of the legislature were necessary to this important object, created a board of commissioners, for the construction, by private subscription, of a mole or pier within the corporate bounds of the city, and opposite the docks fronting the harbor, so as to [660] comprise a basin of given dimensions, for the accommodation of canal boats, vessels, and other craft, and rafts of lumber. The act prescribes their duties in conducting the work, regulates the mode of expenditure, and on filing an account of this with the comptroller, and a certificate to be recorded with the secretary of state, that the mole or pier with the sloop lock and certain bridges were finished, the commissioners of the land office were to grant to the pier commissioners, in joint tenancy, the land occupied by the mole or pier and a sloop lock. The tolls and wharfage, payable to the proprietors, were regulated. The lots on the pier were to be sold and the avails distributed among the subscribers to the fund, and spaces are to be kept open and clear for teams. By the ninth section, (*Laws of* 1823, *p.* 130,) a sloop lock at the southern termination was to be erected by the pier commissioners, under the direction of one of the

---

Smith v. The Comptroller of the State.

canal commissioners. And on the work being completed, the canal commissioners were to charge the increased tolls for navigating the basin, by the canal boats, craft and lumber, in the same manner as if it were a part of the canal, such tolls to be collected and paid into the state treasury for the account of the pier proprietors; and the act declared that *these should be paid annually in December*, by the treasurer, on the warrant of the comptroller, to the agent of the owners of the pier.     The same section then declares, that after deducting the expense of attending the sloop lock and draw-bridges, and for *necessary repairs of the lock and pier*, the residue shall be divided among the pier proprietors.     By the tenth section, (*p.* 131,) the state might, within five years, purchase out the proprietors.     They (the proprietors) were also, out of their wharfage money, to indemnify for adjacent lands overflown.     The consent of the corporation of the city of Albany was required as a condition to the act going into effect; which was given in due form, (*Session of* 1823, *p.* 131, § 12, *and note.*)     The pier was constructed accordingly, comprising a basin of 4100 feet in length and 150 to 500 feet in width.     A state grant was obtained for the land occupied by the pier, &c., and in July, 1825, it was, with a small exception, divided into lots and afterwards sold; the corporation of Albany joining the commissioners as grantors.

The deeds of conveyance contained various and complicated provisions and [661] reservations in respect to the rights of the parties, both corporate and individual.     And since that time the canal commissioners have charged the basin with canal tolls which have been credited and paid to the superintendent, whom the proprietors constituted their agent for receiving them.

The act of April 20, 1825, (*p.* 400,) which it is admitted was passed on request of the proprietors, relinquished the state right of purchase, provided that the company " shall keep the said pier or mole and sloop lock in good repair for the reception of canal boats and other vessels."

So far the duty either of cleansing, excavating, or deepening the basin is, expressly imposed upon no one.     But the act of April 5, 1828, (*p.* 183, § 6,) declares it lawful for the corporation of Albany to do this in respect to any part of the basin, and assess the expenses in the same manner as they are authorized to do in the 4th section of the same act for improving streets and roads, &c., on the persons benefited by the improvement.     Again, by the act of April, 27, 1835, (*p.* 172, § 5,) the corporation are authorized to order and direct the excavation, deepening or cleansing any part of the basin they may consider necessary for its navigation.     The expenses are to be apportioned, by special commissioners, among the buildings, lots, wharves, docks, and pier lots benefited; and they are to consider also the benefit to the pier company by their annual receipts of toll, (§ 7, *p.* 173.)     And by the act of April 14, 1836, (*p.* 186,) to amend that of 1835, the corporation shall, simultaneously with the improvements authorized and required by the amended act, cause another opening to be made through the pier, with a similar provision for expenses.

It appears by the 6th section of the by-law of October 19, 1835, and the relator's affidavit, that the city corporation have assumed the duty imposed by the statute of 1835, and partially acted under their powers; though they have made but small progress in the excavation.

I have been equally unsuccessful with the counsel for the relator, in searching for any direct or express duty imposed by these statutes on the proprietors, to deepen, excavate, or cleanse this basin.     The attorney-general supposes [662] that the act of the 20th April, 1825, virtually imposes that duty.     That act contains a proviso that they shall keep the *pier and sloop lock* in repair for the *reception* of boats and other vessels.     The words are easily satisfied by confining them to the objects named.     Repairs for the reception of boats and vessels are equally predicable of the pier and lock with the bed of the basin itself.     Each must be kept in a good condition to a certain extent, or the navigable purposes of

the basin in the reception of boats and vessels will fail; and this is especially so of the lock, which is used in the immediate reception of various craft.

As to the argument sought to be derived from the obligation of the pier proprietors under the act of 1835, to share in the expenses of the Albany corporation, in improving the basin by excavation, &c., so far from proving the exclusive duty to repair on the side of the proprietors, rather goes in favor of their exemption. By that statute they are put upon the footing of other city corporators, and made to contribute, in common with others, according to a city assessment to be framed with a view to their respective benefit anticipated from the proposed improvement.

But waiving the words of the statute, the attorney-general insists on the common law duty arising from the reception of tolls. The general position that the receiver of tolls from a highway, or the subject of any franchise, incurs of common right the duty of keeping it in feasible repair, is unquestionable. But I do not understand these proprietors to hold any franchise whatever, beyond the ground covered by the pier, lock, bridges, &c., around and over the waters of the basin and the entrances to it. The soil of the basin, being at tide water, belongs to the state; and even if it were above tide water, the state would still hold its right of way and occupation for the purposes of internal navigation. Neither the right of soil, nor the right of the public easement, has ever been granted to the pier proprietors; and so far from being under obligation to repair the basin itself, they would, for aught I see, be trespassers on the land of the state, [663] should they attempt to repair beyond the pier and lock. The state grant of land to the pier commissioners, under the act of 1823, embraced nothing beyond. But the state have also granted the tolls of the basin, derivable from its occupation as an extension of the canal; and is it not absurd that toll should be allowed for such a privilege without the usual correlative obligation imposed by the common law? Is the state or city corporation to perform the repairs and the pier proprietors to receive the consideration? If the question were applicable, there could be no difficulty in the case. The common law would certainly answer, as it always does in respect to this kind of property; "he who receives the benefit must take the burthen." That law abhors a sinecure, as nature is supposed to abhor a vacuum. But I am still at a loss to find any danger of a sinecure in the case. The duty of the pier proprietors was very onerous in the beginning, and must continue measurably so. They constructed the pier, the lock, the draw-bridges, &c. On them is imposed in perpetuity the duty of considerable repairs, attendance, &c., in respect to these their own property. To relieve them from the bulk of their original expenses, and to make a profit, if you please, they derive and are empowered to sell a fee in the pier lots. For the same or some other duty, no matter what, since in terms it is confined to their own estate, they are partially compensated by wharfage, &c. And then, in the words of the act, the state will collect and pay them the increased canal tolls, which, *after defraying the expense of attending the lock and draw-bridges, &c., and of repairs on the lock and pier,* are to form a dividend among the proprietors.

The state appears to be perfectly conscious that it has left no other duty to be performed by the proprietors. Instead of anywhere intimating an obligation to deepen, excavate, or cleanse the basin, it retains the fee as a part of the canal, and in the acts of 1828, 1835, and 1836, brings the basin into the street system of the Albany corporation, expressly conferring powers of repair, which have been assented to, assumed, and partially executed by the city. These [664] provisions extend to the basin and every part of the basin. All this, too, stands, so far as I can see, in perfect accordance with the system of benefit and obligation in which the system originated. The recital in the act of 1823 speaks of what is extremely obvious, the accommodation of carriers, by which the general commerce and internal navigation of the state are to be enlarged and improved, the trade of the city to be extended; and with a view to all this, individual capital is called into action through the proprietors of the pier, who are to

Smith v. The Comptroller of the State.

receive a compensation of regulated extent, supposed by the contracting parties to be so much as they deserved. For all this, the state takes the labor of collecting and paying over to the proprietors a toll on the extension of the public canal thus partially made. The city having also become a party to the undertaking, from which they derive an undoubted benefit, are willing to come in for their share of the burthen, and to them the state assigns the duty of deepening, excavating, and cleansing the basin, from time to time, as the exigencies of the public business may require. All this speaks a language which, it appears to me, cannot be misunderstood.

It is said that the statutes relative to excavation, &c., by the corporation, are not imperative; that the city is merely *authorized, not compelled* to act. It appears to me that such an answer would stand for a very weak one on the side of the city, who have acknowledged and participated in the benefits and obligations of the whole enterprise, in all its stages, and in the end have undertaken to deepen and excavate the whole area of the basin. (*By-law of Oct.* 19, 1835, § 6.) But whether that would be so or not, the meaning of the state is not the less obvious that the duty of excavation in the basin should repose elsewhere than on the pier proprietors. If the city be not bound, that is perhaps owing to a defect or inadvertence in the original bargain; or the state itself may have intended to perform the work of excavation, as they do in other parts of the canal. It is enough that it forms no argument for pressing the proprietors beyond their conventional obligation.

We have thus, I think, exhausted all the sources of instruction attainable in the statutes or the common law. No duty on the part of [665] the proprietors to deepen, excavate, cleanse, or otherwise repair the very bed of the basin, is derivable from the express words of the statutes, or fairly to be implied from their words, or the system or scope of their provisions; and no common law duty can be inferred contrary to what is a plain bargain between the state and the proprietors. I clearly understand that bargain to be, in short, that the pier proprietors shall perform the duties enumerated, which do not comprehend but exclude, by plain implication, the obligation in question.

But if the obligation had been created by statute and assumed by the proprietors as a part of the original bargain—even had they made an express covenant to keep the basin excavated, which is putting a case the strongest against them, I think the state has mistaken its remedy. It has taken up the office of collecting agent. There its office stops. It becomes an annual debtor in December, for moneys had and received to the use of the proprietors. These moneys it must pay, unless it have a right by implication of law to retain for the supposed default. This implied right of an agent arises in only two cases: either in virtue of a lien or a set-off. A lien may arise from a general balance according to the mercantile law in the course of disbursement; but the state is neither a factor nor disbursing agent. And no right of set-off can be raised, for the debt due is unliquidated. The performance by the state of what it might claim from its covenantors is not a liquidation. It may have done much more, or at greater expense, or in a more imperfect manner than the proprietors are willing to allow; and they would have a right to the opinion of a jury in liquidation of such a claim. There was no remedy here by the act of the party. It lay in an action or indictment only, in any view which can be supposed against the proprietors of the pier.                The motion must be granted.