## Case No. 9,027.

### The MANISTEE.

[5 Biss. 381; 1 6 Chi. Leg. News, 126; 3 Ins. Law J. 153.]

District Court, E. D. Wisconsin.    Aug., 1873.[2]

COLLISION—LIBEL BY INSURER — LOSS NOT ACTUALLY PAID—POLICY ISSUED IN DISREGARD OF STATUTORY REQUIREMENTS.

1. In case of a total loss of a cargo by collision, a libel may be brought by the insurer against the colliding vessel, after notice and proof of the loss and demand of payment, though without actual payment.

2. The insured having been fully satisfied for the loss, and not intervening or opposing the prosecution of the libel of the insurer, the carrier can not be permitted to raise the objection of non-payment of the loss before libel brought.

3. Where the statutes of a state require foreign insurance companies to comply with certain requirements, and declare penalties for doing business in disregard of these requirements, in case of a loss on a policy issued in disregard of such requirements, a carrier can not be permitted to make this a defense to a libel, the loss having been paid by the company.

[Cited in Amazon Ins. Co. v. The Iron Mountain, Case No. 270.]

This was a libel by the Traders' Insurance Company of Chicago and the Orient Mutual Insurance Company of New York, against the propeller Manistee, to recover the amount of $10,700 insurance paid by them on the cargo of the schooner S. Robinson, which was sunk by collision with the Manistee.

Emmons & Markham, for libellants.

Finches, Lynde & Miller, for respondent.

MILLER, District Judge.    On the 23d of May, 1872, at Chicago, there was shipped on board the schooner S. Robinson sixteen thousand and five bushels of corn, of the value of ten thousand and seven hundred dollars, to be transported on board of said schooner to Kingston, Canada.    The Traders' Insurance Company made and delivered to the shipper a policy on said cargo, in the sum of five thousand seven hundred dollars, and the Orient Mutual Insurance Company in the sum of five thousand dollars, against the risks of collision and of the perils of the lakes.

The schooner, while on her trip down the lakes with the cargo on board, was damaged by collision with the propeller Manistee. on the 24th of May, 1872, so that she sunk, and her cargo became a total loss, rendering thereby the libellants liable to pay therefor.

Proof of loss was made May 28, 1872. May 30, notice of the loss was given these insurance companies, and of an abandonment to them, with claim for a total loss.    This libel was filed and monition issued May 31.    June 12, 1872, the Orient Mutual Insurance Company paid five thousand dollars, the amount of their policy.    In case of loss, by a condi-

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]
2 [Affirmed in Case No. 9,028.]

tion of the policy issued by this company, the loss is payable in thirty days after proof of interest in the property insured.

The libel alleges that payment of the loss had been made by these libellants, which is a mistake as to the Orient Mutual Insurance Company, but it had been made by this company within thirty days after the loss, according to the proofs in support of the libel.    The policy of the Orient Mutual Insurance Company was issued by an agent in Chicago. There is no evidence that the agent of this company who issued the policy had authority to do the business under the laws of the state of Illinois.

It was contended by counsel at the hearing that the policy is void for having been issued in disregard of the requirements of the laws of that state.    The statute laws of Illinois on this subject were read at the argument, from pages 595–599, 1 Stat. 1858 (Cook Ed.).    These laws require that insurance companies incorporated and located in states other than the state of Illinois, produce certain statements respecting their liability and condition, and procure from the auditor of the state authority to transact business within the state. And it is further declared that it shall be unlawful for an agent to do business without having first complied with those laws.    And upon conviction for violating these requirements, punishment by fine or imprisonment, or both, may be imposed.

Those statute laws do not declare void policies issued by foreign companies through a local agent in disregard or violation of them. The object of these statutes was for the security of citizens doing business with such companies, by bringing them as near as possible to local corporations, and also as a provision for revenue.    Where a statute prohibits or annexes a penalty to its commission, the act is made unlawful, but it does not follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it.    Where a statute is silent, and contains nothing from which the contrary can properly be inferred, a contract in contravention of it is void.    But the whole statute must be examined in order to decide whether or not it does contain anything from which the contrary can be properly inferred.    Harris v. Runnels, 12 How. [53 U. S.] 79; Ocean Ins. Co. v. Polleys, 13 Pet. [38 U. S.] 157.    There is no penalty pronounced against a person for obtaining a policy from, or doing business with, the company that has not complied with the requirements of those statutes.    The insured in this case obtained the policy upon the payment of the premium, and has received from this company full satisfaction for the loss.

If the owner of the cargo had not taken a policy from the agent of this company, but had shipped without insurance, he would be entitled to recover of the carrier for the loss, the value of the cargo.    In my opinion, the carrier should not be permitted to make this

defense. The shipper might have brought a libel for the use of the company, and if the use were not expressed in the record, the court would protect the company, even after a decree in favor of the libellant.

This brings me to the consideration of the second objection to a decree for the Orient Mutual Insurance Company in this libel. The point presented is the non-payment of the loss prior to bringing the libel. Notice of a total loss of the cargo insured was given by the insured to the insurance company prior to the bringing of the libel, and demand of payment made. Where there is a total loss there is no necessity for a formal instrument of abandonment. A total loss, with notice and demand of payment, is equivalent to an abandonment and acceptance. The insured renounces and yields up to the insurers all the right, title and claim to what may be saved. The insurer then stands in the place of the insured, and becomes legally entitled to all that can be rescued from destruction. "Where the thing insured, and every part of it, is completely gone out of the power of the insured, it is just and proper that he should receive at once as for a total loss, and leave the jus recuperandi to the insurer." Marsh. Ins. B. I. A. 14.

"The insured has a right to call upon the underwriter for a total loss, and of course to abandon as soon as he hears of such a calamity having happened, his claim to an indemnity not being at all suspended by the chance of a future recovery of part of the property, but because of the abandonment that chance belongs to the underwriters." Park, Ins. 9; Comegys v. Vasse, 1 Pet. [26 U. S.] 193.

The payment of a total loss by the insurers, or their liability to pay such a loss, in consequence of an abandonment, gives them an equitable right to the property, or what remains of it, so far as it was covered by the policy. And the abandonment, considered as an assignment of property, must have reference to the time of the loss. 2 Phil. Ins. § 1707.

It is a universal rule that all rights, claims and interests which are indispensably connected with the property insured, pass to the insurer by an abandonment of the property, so far as the same belonged to the insured, and to the extent of the interest covered by the policy; as a right to contribution for general average, all claims for negligence or any misconduct causing injury to the property, as for collision or for injury to goods, or for an indemnity from a foreign government. Arnould, Ins. (4th Ed., by Maclachlan) 863.

Under the 34th admiralty rule, an insurer who has accepted an abandonment, which divests the original claimant of all interest, may be admitted to intervene, and become the dominus litis. The Ann C. Pratt [Case No. 409]: In this case it does not appear that the insurance company had satisfied the in-

sured for the loss. "And the insurer may be allowed to intervene and become the dominus litis, when he can show an abandonment which divests the original claimant of all interest. But with this the respondent has no concern, nor can he defend himself by setting up these equities of others, unless he can show that he has made satisfaction to the party justly entitled to receive the damages." The Monticello v. Mollison, 17 How. [58 U. S.] 152, 156; Rogers v. Holly, 18 Wend. 349.

The owner and insurer in respect to the property and the risks incident thereto may be considered as one person, having the beneficial right to indemnity from the carrier. The notice of the total loss, with demand of payment according to the terms of the policy, vested in the insurance company the exclusive title to the insured property, and fixed the liability of the insurer to pay the amount of the policy within thirty days. And upon the equitable principles of admiralty, the insurer being considered in the nature of a surety should not be required to satisfy the insured prior to instituting a libel against the carrier, when the insured does not object, nor intervene for his interest. In this case the insured was fully satisfied for the loss, and the carrier should not be permitted to oppose the prosecution of this libel on the part of the Orient Mutual Insurance Company.

Decree for libellants.

[This decree was affirmed by the circuit court. Case No. 9,028.]