LUMBERMEN'S MUTUAL INSURANCE COMPANY v. KANSAS CITY, FORT SCOTT AND MEMPHIS RAILROAD COMPANY, Appellant.

### Division One, March 30, 1899.*

1. **Railroads**: DESTRUCTION OF PROPERTY BY FIRE: INSURANCE. Section 2615, Revised Statutes 1889, makes a railroad company liable in damages for property situated in the neighborhood of its road, which may be destroyed by fire communicated, directly or indirectly, from its engines, whether or not such property abuts upon the railroad right of way. And such statute violates no constitutional provision, State or national. It also gives such railroad company an insurable interest in such property.

*NOTE.—Decided February 15, 1899. Motion for rehearing filed. Rehearing denied March 30, 1899.

2. ———: ———: ———: SUBROGATION. And an insurance company which has paid the owner of the property so destroyed by fire, a policy of insurance issued thereon, will be subrogated to the right of such owners, to the extent of the payment made by it, and can maintain an action in its own name to recover the amount of such payment.

3. ———: ———: ———: BY FOREIGN INSURANCE COMPANY. And where the contract of insurance was entered into in another State, such suit may be maintained by an insurance company organized under the laws of that State, which has not obtained from the Superintendent of the Insurance Department of Missouri a certificate authorizing it to do business within this State. The statute says no such company shall transact any insurance business within this State until it has obtained such certificate, but it does not declare void contracts of insurance by such companies even when made within this State, and it nowhere forbids such companies organized under the laws of another State to make within such State a contract insuring property situated within this State.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

WALLACE PRATT and I. P. DANA for appellant.

(1) The court erred in holding that defendant was liable to anyone under section 2615, Revised Statutes 1889, for property destroyed by fire which did not abut upon or adjoin defendant's property, and to which the fire was not communicated from defendant's engine, but from the burning of another building. Such a construction of the statute makes it unconstitutional and void, and is contrary to the reasoning of this court in the cases which have sustained the section as valid and constitutional. Mathews v. Railroad, 121 Mo. 298; Campbell v. Railroad, Id. 340; Ryan v. Railroad, 35 N. Y. 210. (2) Respondent is not entitled to recover in this action, for the reason that the alleged insurance policy upon which the action is based was issued in violation and contrary to the policy of the laws of Missouri. Tribble v. Nichols, 53 Ark. 271; Baldwin v. Moffit, 94 N. Y. 82; Perkins v. Hall, 105 Id. 539;

Wilson v. Babbett, 4 Dillon, 208. The alleged policy was, void, because the insurance company issuing it had never complied with any of the provisions of the laws of Missouri applicable to foreign insurance companies, and which they are required to comply with before doing any insurance business in this State. R. S. 1889, chap. 39; Bishop on Contracts, secs. 471, 477 and 549; Ford v. Chicago Ass'n, 39 N. E. 651. (3) But, even if the alleged contract of insurance was not for all purposes void, yet respondent, which issued it in violation of the laws of Missouri, can not in this forum derive or assert any rights thereunder, or by virtue thereof, because it was a wrongdoer, and it is a fundamental principle of both law and equity that no one shall be allowed to derive any advantage from his own wrong.

FYKE, YATES & FYKE for respondent.

(1) To render the defendant liable, it is not necessary that the property destroyed should abut upon or adjoin defendant's road. The statute fixes no limit. Peppers v. Railroad, 67 Mo. 715; Hightower v. Railroad, 67 Mo. 726. (2) Even if it be conceded that the insurance company was doing business in Missouri without having complied with the laws of Missouri, the policy was not void, but was a valid obligation against the insurance company, and could have been enforced against it; so that the payment by it was not voluntary. Ins. v. Curran, 8 Kan. 9; Gauser v. Ins. Co., 34 Minn. 372; Pennypacker v. Ins. Co., 80 Ia. 56. (3) The contract of insurance was an Illinois contract, valid there and valid in Missouri, and plaintiff can maintain an action to enforce any right or obligation which arises out of it. Ins. Co. v. Way, 62 N. H. 622; Ins. Co. v. Railroad, 41 Fed. 643; Lamb v. Bowser, 7 Biss. 315; Ins. v. Kenyon, 37 N. J. L. 33; Railroad v. Philadelphia Fire Ass'n, 55 Ark. 163; People v. Gilbert, 47 Hun. 522. (4) Sending an insurance policy from another State is not carrying on business in this

State.    Ins. Co. v. Railroad, 41 Fed. 643; New Orleans v. Rhenist Westphaier Lloyds, 31 La. Ann. 781; Hyde v. Goodnow, 3 W. T. 266.    (5)    Insuring one's own property in a company not authorized to do business is not criminal, and can not be prohibited.    Com. v. Briddle, 139 Pa. 609; Allgeyer v. Louisiana, 165 U. S. 578.    (6)    The carrier can not defeat a suit for libel in case of loss brought by the insurer that has paid for the same, by showing that the insurance company has not complied with the statute in regard to foreign insurance companies.    The Manitee, 5 Biss. 382; Ins. Co. v. Railroad, 33 N. E. 970; State Mutual Fire Assn. v. Brinkley Stave and Heading Co., 25 Ins. L. J. 49; Rockford Ins. Co. v. Rogers, 47 Pac. 848.    (7)    There is no provision of the statute declaring void a policy issued by a company not authorized to do business, and where a penalty to be recovered by a civil action is imposed, no other penalty or forfeiture can be imposed.    Ins. Co. v. Welsh, 18 Mo. 230; Clark v. Middleton, 19 Mo. 53; Dearborn Foundry Co. v. Augustine, 5 Wash. 67; Toledo Tie & Lumber Co. v. Thomas, 33 W. Va. 566; Ins. Co. v. Overholt, 4 Dill. 287; Lester v. Webb, 5 Allen, 569.

BRACE, P. J.—This is an appeal by the defendant railroad company from a judgment of the Jackson Circuit Court in favor of the plaintiff insurance company for the sum of $1,800.

Plaintiff's cause of action is thus stated in the petition.

"Plaintiff alleges that the T. A. Miller Lumber Company is and at all times herein stated was a corporation duly organized and existing by law.    That plaintiff Lumbermen's Mutual Insurance Company is, and at all times herein stated was, a corporation duly organized and existing by virtue of the laws of the State of Illinois and engaged in the business of insuring property owners against loss or damage by fire. That defendant, Kansas City, Fort Scott and Memphis Railroad Company, is, and at all times hereinafter stated was, a

corporation, and was engaged in operating a railroad through the town of Ash Grove, in the State of Missouri, and was using and operating thereon steam engines and locomotives.

"That at the time of the issuing of the policy of insurance, hereinafter mentioned, and on the 6th day of April, 1894, the T. A. Miller Lumber Company was the owner of a certain stock of lumber, lath, shingles, sash, doors and other stock such as is usually kept for sale in country lumber yards, also of a certain brick office building and certain office furniture and fixtures therein contained, and also of certain lumber sheds, all situated on lots 2, 3, 4, 5, in Brok and Ralph Watkin's Railroad Addition to the town of Ash Grove, Missouri. That on the 13th day of December, 1893, in consideration of a certain premium to it paid by said T. A. Miller Lumber Company, the Lumbermen's Mutual Insurance Company issued to said T. A. Miller Lumber Company a certain policy of insurance, insuring it against loss or damage by fire to the property hereinbefore specified, for the period of one year from said date, to the amounts and as follows: $2,000 on said described stock of lumber; $250 on said described brick office building and the furniture and fixtures therein contained, and $250 on said described lumber sheds.

"That on the 6th day of April, 1893, and while said policy of insurance was in full force and effect, the said stock of lumber, laths, shingles, sash, doors and other stock in trade, being of the reasonable cash value of $2,517.24, was wholly destroyed by fire, and said brick office building was damaged by fire to the amount of $150, and said lumber sheds, being at the time of the reasonable cash value of $395.60, were wholly destroyed by fire.

"That the fire which destroyed and damaged said property was communicated thereto by a locomotive engine being used by defendant upon its said railroad.

"That by reason of said fire said Lumbermen's Mutual Insurance Company became liable to pay to said T. A. Miller Lumber Company the sum of $2,400, and by virtue of the terms of said policy of insurance, which sum said Lumbermen's Mutual Insurance Company has long since paid. That upon the payment of said sum the said Lumbermen's Mutual Insurance Company became and was subrogated to all the rights of the said T. A. Miller Lumber Company against said defendant for the recovery of said sum of money, twenty-four hundred dollars, by reason of the destruction of said property by fire, communicated thereto by a locomotive engine of defendant as aforesaid.

"That by reason of all the premises aforesaid, an action has accrued to plaintiff against defendant, and plaintiff alleges that it has sustained damages in the sum of $3,013.42, for which it asks judgment, and for costs."

To defeat a recovery upon this cause of action defendant relied upon two of the defenses set out in the answer, as follows:

First.   That "the said Lumbermen's Mutual Insurance Company seeks to recover in this action under and by virtue of an act of the Legislature of the State of Missouri, approved March 31, 1887, which is embodied in the Revised Statutes of said State of 1889 as section 2615 thereof, which act and section defendant avers is illegal, unconstitutional and void in that it seeks to deprive the defendant of its property without due process of law and is contrary to the provisions of section 30, article 2, of the Constitution of Missouri. That said act and section is illegal, unconstitutional and void in that it denies the defendant the equal protection of the law, contrary to the provisions of section 1, article 14, of the amendments of the Constitution of the United States; and further, in that it deprives defendant of its property without due process of law, contrary to the provisions of article

5 of the amendments to the Constitution of the United States, and of article 6 of said Constitution.

Second. "That the plaintiff, Lumbermen's Mutual Insurance Company, had not at the time it claims in said petition to have insured the property of said T. A. Miller Lumber Company, nor at the time it claims to have paid the loss thereon, nor at any time between those dates, nor has it since complied with the provisions of the laws of Missouri or any of them in regard to the steps and action necessary and required therein to be taken by insurance companies organized under the laws of other States than Missouri before being allowed to do any insurance business or insure any property in said last named State; that the pretended policy of insurance issued by said insurance company on the property of said lumber company and referred to in said petition was issued in violation of the laws of Missouri and contrary and in opposition to the authority and policy of said laws and of said State; and that said insurance company is not entitled to plead or prove or to take or deprive any benefit from or under section 2615 of the Revised Statutes of Missouri for 1889, or any other statute or law of said State."

The case was tried before the court without a jury, and the refusal of the trial court to sustain either of these defenses, and the admission of some evidence alleged to be "in variance with and contrary to the allegations of the petition," are the errors assigned for a reversal of the judgment.

(1) On the trial the plaintiff, over the objections of the defendant, was permitted to introduce evidence tending to prove that the policy of insurance in question, dated the thirteenth day of December, 1893, was issued from the office of the insurance company in Chicago, in renewal of a former policy issued from the same office, dated December 13, 1889, the application for which, signed by the treasurer of the lumber company, was made at the Chicago office. We do not find that this evidence is contrary to or inconsistent with the

allegations of the petition or that the court committed error in admitting it.    It was simply evidence tending to show in detail how the ultimate fact charged in the petition was consummated.

(2)    By section 2615, Revised Statutes 1889, it is provided that:    "Each railroad corporation owning or operating a railroad in this State shall be responsible in damages to every person and corporation whose property may be injured or destroyed by fire communicated directly or indirectly by locomotive engines in use upon the railroad owned or operated by such railroad corporation, and each such railroad corporation shall have an insurable interest in the property upon the route of the railroad owned or operated by it, and may procure insurance thereon in its own behalf for its protection against such damages."

It was admitted that the property of the lumber company which was consumed and damaged by the fire was situated on the north side of Main street in said town, about one hundred and sixty-five feet from the main track of defendant's railroad, which was on the south side of said street. That between Main street and the railroad was a tier of lots about seventy feet deep, measuring from the street to the railroad right of way, and that on one of said lots was the building of one Schelling; that the fire was communicated to said Schelling's building, by defendant's engine number 129, and after said building was partly consumed, shingle and other light substances from his building were blown into the lumber yard and the fire in question resulted therefrom. On this state of facts it is contended for the defendant that as plaintiff's property did not abut upon or adjoin defendant's right of way, and the fire was not communicated thereto directly from the defendant's engines, to hold the defendant liable therefor, under said section, would make the same obnoxious to the constitutional provision cited in the answer, and contrary to the reasoning of this court in  Mathews  v.

Railroad, 121 Mo. 298; and Campbell v. Railroad, 121 Mo. 340, in which the constitutionality of this statute was sustained. We fail to find in the opinions in these cases any support for this contention. In each of these cases the point was made that this section does not authorize damages for property upon which insurance could not have been obtained, to which this court replied, in the first case: "The act under consideration is not limited to any specific property. It is broad enough to include both real and personal property. The statute is an enabling act. By its terms the property becomes a subject of insurance" (loc. cit., p. 332), and in the second case: "We do not think it necessary to the validity of the statute that the railroad corporations should have been given an insurable interest in the property upon the route of their roads; nor does the fact that such interest was given limit their responsibility to insurable property that may be injured or destroyed." (Loc. cit., p. 352.) In each of these cases the principle upon which the statute was upheld is specifically stated in the first case on page 315, and in the second case in paragraph I of the opinion, page 344 et seq. Both of these cases were appealed to the Supreme Court of the United States, where the judgments of this court were affirmed, and the statute sustained on the same principle. [Railroad v. Mathews, 165 U. S. 1.] Both cases were disposed of by one opinion, in which Mr. Justice GRAY, who delivered the opinion of the court, after an exhaustive review of the authorities, citing with approval and quoting from, among others, Hart v. Western Railroad, 13 Met. 99, in which the Supreme Court of Massachusetts held under a like statute, that the liability of the railroad company was not restricted to a building by the side of its road, which the very particles of fire emanating from the engines fell upon and kindled a flame in, but extended to a building across a street, set on fire by sparks wafted by the wind from the first building

while it was burning, and from Ingersoll v. Railroad, 8 Allen, 438, in which it was held that it was immaterial that a building was destroyed by the spreading of a fire from other buildings on which the sparks from the engine had fallen, and other analogous cases, in summing up, states specifically the ground upon which the validity of this statute is placed in the following language: "Fire, while necessary for many uses of civilized man, is a dangerous, volatile and destructive element, which often escapes in the form of sparks, capable of being wafted afar through the air, and of destroying any combustible property on which they fall; and which, when it has once gained headway, can hardly be arrested or controlled. Railroad corporations, in order the better to carry out the public object of their creation, the sure and prompt transportation of passengers and goods, have been authorized by statute to use locomotive engines propelled by steam generated by fires lighted upon those engines. It is within the authority of the legislature to make adequate provision for protecting the property of others against loss or injury by sparks from such engines. The right of the citizen not to have his property burned without compensation is no less to be regarded than the right of the corporation to set it on fire. To require the utmost care and diligence of the railroad corporations in taking precautions against the escape of fire from their engines might not afford sufficient protection to the owners of property in the neighborhood of the railroads. When both parties are equally faultless, the legislature may properly consider it to be just that the duty of insuring private property against loss or injury caused by the use of dangerous instruments should rest upon the railroad company, which employs the instruments and creates the peril for its own profit, rather than upon the owner of the property, who has no control over or interest in those instruments. The very statute, now in question, which makes the

railroad company liable in damages for property so destroyed, gives it, for its protection against such damages, an insurable interest in the property in danger of destruction, and the right to obtain insurance thereon in its own behalf; and it may obtain insurance upon all such property generally, without specifying any particular property. [Eastern Railroad v. Relief Ins. Co., 98 Mass. 420.] The statute is not a penal one, imposing punishment for a violation of law; but it is purely remedial, making the party doing a lawful act for its own profit, liable in damages to the innocent party injured thereby, and giving to that party the whole damages, measured by the injury suffered. [Grand Trunk Railway v. Richardson, 91 U. S. 454, 472; Huntington v. Attrill, 146 U. S. 657.] The statute is a constitutional and valid exercise of the legislative power of the State, and applies to all railroad corporations alike. Consequently, it neither violates any contract between the State and the railroad company, nor deprives the company of its property without due process of law, nor yet denies to it the equal protection of the laws."

The plain deduction to be drawn from the ruling and reasoning in these cases is, that the statute in question makes the railroad company liable for damages communicated by its engines directly or indirectly to property along its route in the neighborhood of its road, so situated as to be exposed to such danger, and in doing so violates no constitutional provision, State or National, and further, that the statute does in fact give to the railroad company an insurable interest in all such property. The property destroyed in this instance comes plainly within the meaning of the statute, as thus interpreted and upheld, although it did not abut upon the line of railroad. It was on its route and in its neighborhood so as to be exposed to the danger, and the court committed no error in applying its provisions to the facts in this case.

(3)   It appears from the evidence that The T. A. Miller Lumber Company is a corporation organized under the laws of Missouri, engaged in the lumber business at Ash Grove in this State.   That one S. K. Martin, a resident of Chicago, and a wholesale lumber dealer, controlling a number of retail yards, owned half the capital stock of the lumber company and was its president, and he was also a director of the plaintiff insurance 'company.   That about December 13th, 1889, upon an application made by the lumber company, through him, to the insurance company at Chicago, the original policy of insurance of that date was issued.   The policy was for one year, but with provision for a renewal for a period of five years, and the policy was renewed from year to year, until December 13, 1893, when it was renewed as before for one year and was thus in force when the fire occurred.   That the original policy was issued in duplicate and delivered to Martin in Chicago, one of which was retained by him, the other copy sent by mail to the manager of the lumber company in Missouri. . The premiums were paid in the first instance by S. K. Martin or the S. K. Martin Lumber Company of Chicago, but were ultimately paid by the T. A. Miller Lumber Company, to whom the renewal receipts were sent and who were in possession thereof and of the policy at the time of the fire and the adjustment of the loss.   The loss was adjusted in Missouri, and paid by draft drawn by the T. A. Miller Lumber Company in Missouri on the insurance company at Chicago for the sum of $2,400; which was then paid by the insurance company, and by virtue of this payment the plaintiff claims in the petition it became subrogated to the lumber company's right of action against the railroad company for the loss occasioned by the fire, and to recover therefor.   The action was begun in December, 1894, and it is conceded that during the whole period of time covered by this transaction the plaintiff insurance company did not have an office in this State, or an agent

soliciting insurance therein, and did not in any manner comply with the laws of this State authorizing foreign insurance companies to do business in this State, and governing the same. By reason of which facts the defendant contends the plaintiff ought not to maintain its action, and the trial court erred in not so holding.

It is well settled law in this country that "the insurers against fire of property which has been destroyed by fire communicated from a locomotive engine will upon payment for the loss be subrogated to the extent of their payment to the remedies of the insured, as the owners of the property insured and destroyed against the railroad company for the loss" [Sheldon on Subrogation, section 230, and cases cited], and it is equally as well settled, that subrogation will not be allowed "in favor of one who would thereby be permitted to derive an advantage from, or to establish his claim through his own wrong, or negligence, or inequitable, or illegal conduct." [24 Am. and Eng. Ency. of Law, p. 193, and cases cited in note 1.] The plaintiff here seeks to establish its claim through the policy of insurance and the payment made thereunder as aforesaid. The defendant contends that in the issuance of this policy and its renewals, the plaintiff was guilty of such wrongful and illegal conduct as should preclude a recovery in this action, in that, the same was so done without the authority, and contrary to the provisions of the statute of this State regulating and governing the business of fire insurance in this State by companies incorporated or organized under the laws of this or another State of the United States, as embodied in chapter 89, section 5890, *et sequitur* of the Revised Statutes of 1889. This statute after prescribing the prerequisites for obtaining authority to do fire insurance business in this State by such companies, prohibits any of them from transacting in this State "any insurance business, unless it shall first procure from the Superintendent of the Insurance Department of this State, a certificate stating that the requirements of the insurance

laws have been complied with, authorizing it to do business" (section 5910), under penalty as follows:

Section 5916. "Any person or persons who in this State shall act as agent or solicitor for any individual, association of individuals or corporation engaged in the transaction of insurance business, without such person or persons first having obtained from the Superintendent of the Insurance Department of this State the certificate authorizing him to act as such agent or solicitor, as required by section 5910, . . . shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined not less than ten nor more than one hundred dollars for each offense, or imprisoned in the county or city jail for not less than ten days nor more than six months, or by both such fine and imprisonment."

Section 5917. "Any association of individuals, and any corporation transacting in this State any insurance business, without being authorized by the Superintendent of the Insurance Department of this State so to do, . . . shall be liable to a penalty of two hundred and fifty dollars for each offense, which penalty shall be recovered by ordinary civil action in the name of the State . . ."

The statute nowhere declares contracts of insurance entered into in this State by companies organized under the laws thereof or of another State, who have not complied with its requirements, void, and it has been held in many cases that, although such contracts may be forbidden under penalty, unless the statute does so declare, the contracts are not void, but will be enforced against the company.   [Columbus Ins. Co. v. Walsh, 18 Mo. 230; Clark v. Ins. Co., 19 Mo. 54; Ganser v. Firemen's Fund Ins., 34 Minn. 372; The Manistee, 5 Biss. 381; Pennypacker v. Capital Ins. Co., 80 Ia. 56; State Ins. Co. v. Brinkley Stave Co., 61 Ark. 1; Phoenix Ins. Co. v. Pennsylvania Co., 33 N. E. 970; Toledo T. & L. Co. v. Thomas, 33 West Va. 566; Germania Ins. Co. v. Curran, 8 Kan. 1; Rockford Ins. Co. v. Rogers, 47 Pac. 848.]

And this proposition is supported by the great weight of authority.  On the other hand there is a line of cases cited in the brief of counsel for the defendant in which it is in effect held that a contract prohibited under penalty, is invalidated at least to the extent as applied in insurance cases, of holding that such contracts will not be enforced in favor of the company.  On the facts of this case, however, it is unnecessary to enter into the discussion of this question or make a ruling thereon, as it clearly appears that the contract of insurance in question was entered into in the State of Illinois, and it is not questioned that the same was a valid and binding contract under the laws of that State.  Such being the case, there is and could be nothing in this statute by which a citizen of Missouri or one owning property therein, is or could be deprived of the right to insure such property in the State of Illinois, in a company authorized under its laws to insure that property there, if he saw proper to do so, and having no extraterritorial force, there is and could be nothing to deprive such company of the right to insure that property if it saw proper to do so.    [Lamb v. Bowser, 7 Biss. 315; Marine Ins. Co. v. Railroad, 41 Fed. 643; Comm. v. Biddle, 139 Pa. St. 605.]    But as the laws of Illinois likewise have no extraterritorial force, the enforcement of a contract made in pursuance of, and under those laws being enforcible in this State on the score of comity only, such enforcement may be prohibited by the laws of this State or refused on the ground that the contract is contrary to the policy of its laws.    [Paul v. Virginia, 8 Wall. 168; Phila. Fire Ass'n v. New York, 119 U. S. 110.]    Generally, a contract valid where made, is *jure gentium* valid everywhere, but "no nation is bound to recognize or enforce any contracts which are injurious to its own interests, or those of its own subjects."    [Story on Conflict of Laws (8 Ed.), sec. 244; Bishop on Contracts, sec. 473; Rorer on Inter-State Law, cap. 2, sec. 1; Carroll v. East St. Louis, 67 Ill. 568; Cin. Mut. H. A. Co. v. Rosenthal, 55 Ill.

85; 2 Morawetz on Private Corp., sec. 695.]    It is upon
this principle that it is universally held "that corporations
of one State have no right to exercise their franchises in
another State, except upon the assent of such other State,
and upon such terms as may be imposed by the State where
their business is to be done" [Ins. Co. v. Raymond, 70 Mich.
loc. cit. 501, and cases cited on 502]; and it is upon
this principle that our statute rests.    It prescribed the con-
ditions upon which insurance companies may exercise their
franchises in this State, and forbids their exercise under
penalty, except upon compliance with those conditions.    It
does not forbid under penalty or otherwise the insurance of
property situate in this State, in another State, in companies
organized under the laws thereof, and exercising their fran-
chises in such State, nor declare such contracts void, and it
can not be doubted that if the T. A. Miller Lumber Company
were seeking to enforce this contract in this State it would
be upheld against the insurance company, and as that com-
pany has in good faith discharged the obligations of its con-
tract to the lumber company, and thereby become subrogated
to the rights of the lumber company against the defendant
railroad company, which is the right sought to be enforced
in this action, it follows that this right, tinctured with no
wrong, must be sustained.    [Columbus Ins. Co. v. Walsh,
18 Mo. 230; Columbia Fire Ins. Co. v. Kinyon, 37 N. J. L.
33; Lamb v. Bowser, 7 Biss. 315; Marine Ins. Co. v. Rail-
road, 41 Fed. 643; Phoenix Ins. Co. v. Erie Trans. Co., 117
U. S. 312; Railroad v. Fire Ass'n, 55 Ark. 163; Hyde v.
Goodnow, 3 Comstock, 266; Dearborn Foundry Co. v. Au-
gustine, 5 Wash. 67; Lester v. Webb, 5 Allen, 569; Phoenix
Ins. Co. v. Pennsylvania Co., 33 N. E. 970; Rockford Ins.
Co. v. Rogers, 47 Pac. 848.]    The policy of the law is not
what the court may think that policy should be, but what the
legislature declares it to be.

Finding no error, the judgment of the circuit court is
affirmed.    All concur.