v.

STATE.

2 Div. 962.

Court of Appeals of Alabama.

Aug. 19, 1958.

L. W. BELL, for use of Fidelity Ins. Co.

v.

I. U. FREEMAN, d/b/a Freeman Motor Co.

6 Div. 462.

Court of Appeals of Alabama.

June 10, 1958.

Rehearing Denied Aug. 19, 1958.

C. M. Holder, Fayette, for appellant.

Nolen & Enslen, Fayette, for appellee.

PRICE, Judge.

The complaint claims damages for breach of warranty as to title in the sale of an automobile by defendant to L. W. Bell.

Defendant, appearing specially, for that purpose only, filed pleas in abatement 1 and 2, which were "denied" by the court. Defendant amended said pleas 1 and 2 and filed additional pleas in abatement 3, 4, 5, 6 and 7.

Plaintiff amended his complaint to read, "L. W. Bell, suing for the use of Fidelity Insurance Company of Tennessee, a Corporation, plaintiff."

Defendant refiled his pleas in abatement to the complaint as amended. Demurrer was filed to the pleas, but ruling of the court thereon was not invoked, and their sufficiency is not presented. The parties joined issue on the pleas in abatement and

after hearing the evidence on said pleas the court rendered judgment sustaining the pleas.

The plaintiff took a nonsuit and appeals.

The pleas assert that the Fidelity Insurance Company of Tennessee, a Corporation, is the real party in interest, the said L. W. Bell having subrogated his rights to said Fidelity Insurance Company of Tennessee, a Corporation, as a result of a written warranty of title or policy of insurance issued by said Insurance Company to L. W. Bell at Huntsville, Alabama, on February 4, 1955, which said warranty of title or policy of insurance is the basis of this suit, and that said warranty of title or insurance policy falls within the provisions of Code 1940, Title 10, Section 191, as amended, and is void and that this suit is not maintainable in that Fidelity Insurance Company of Tennessee, a Corporation, is a foreign Corporation and was not qualified to do business in the State of Alabama.

The judgment entry recites that the court found from the evidence that The Fidelity Insurance Company of Tennessee, a Corporation, is the real party in interest and that the plaintiff corporation is a foreign corporation not authorized to do business in this State, never having performed the acts required by Title 10, Section 192, Code 1940, and that the suit is based upon a contract, made or entered into in Alabama, the making of which constituted transacting or carrying on of business within the State, and that the suit is not maintainable under the provisions of Title 10, Section 191, Code, supra.

The court further found "that the making of contracts of insurance in the State of Alabama is an interstate act and that the making of such contracts is the doing, transacting or carrying on or engaging in business within the State."

Upon the hearing on the pleas defendant introduced certificate of the Secretary of State and of the State Superintendent of Insurance showing that the said Fidelity Insurance Company of Tennessee was not qualified nor licensed to do business in Alabama, moreover, plaintiff admits in brief that said company was a foreign corporation and had never performed the acts required by Title 10, Section 192, Code.

Defendant also offered in evidence depositions of L. W. Bell upon interrogatories, with title warranty and "release and subrogation agreement" thereto attached. The facts, as shown by the depositions, are set out in appellant's brief as follows: "Stanfield Motors in Atlanta, Georgia, owned a 1953 Model Chevrolet automobile, motor or serial No. LAA147120. A person who claimed to be a prospective purchaser asked to 'try-out' this auto, which he was allowed to do. The auto was never returned, whereupon it was reported as a stolen vehicle. Sometime later this same automobile was purchased by I. U. Freeman, doing business as Freeman Motor Company at Fayette, Alabama. On February 4, 1955, the Freeman Motor Company sold this auto at public auction at Maney Motor Company auto auction in Huntsville, Alabama, and L. W. Bell became the purchaser thereof at and for the sum of $940. L. W. Bell was given a written bill of sale which contained a Title Warranty by Freeman Motor Company. This bill of sale also contained a statement that the auction company guarantees the title, and there was printed thereon the following:

"This Auction Company is protected by an insurance policy issued by the Fidelity Insurance Company of Tennessee which insured the Auction Company against 90% of the loss incurred under this Title Warranty.'

"L. W. Bell took this vehicle to Rome, Georgia, and sold it to Mr. T. Hunter Grant at Mt. Alto Motors. Mr. Grant sold it to another person, from whom it was seized by the Police of Rome, Georgia, and F. B. I. agents, as a stolen vehicle.

"L. W. Bell made demand on Fidelity Insurance Company that they pay $940.00

to Stanfield Motors of Atlanta, which said company did, and the final purchaser was allowed to keep the automobile. The insurance company took a written subrogation agreement from L. W. Bell and undertook to collect from the Freeman Motor Company under the Warranty of Title."

Section 191 of Title 10, Code 1940, reads in pertinent part: "All contracts or agreements made or entered into in this state by foreign corporations which have not qualified to do business in this state shall be held to be void at the suit of such foreign corporation or anyone claiming through or under such foreign corporation by virtue of said void contract or agreement; * * *."

It is contended in brief by appellee that the Maney Auction Company was acting as agent for the Fidelity Insurance Company of Tennessee in this transaction and that the title warranty issued by Maney Auction Company to L. W. Bell and delivered to him at Huntsville was in reality an insurance contract or agreement by and between Fidelity Insurance Company and said Bell for which Mr. Bell paid the Auction Company the sum of Five Dollars. The evidence which it is claimed shows such fact appears in the answers of Mr. Bell to interrogatories propounded to him. Mr. Bell deposed that at the time of the purchase of the automobile he paid to Maney Auto Auction the sum of $5 for warranty of title, and that he had suffered no personal loss due to the fact "that I was covered by insurance in this regard, and in connection with this particular transaction." He deposed further that "I made demand on the Fidelity Insurance Company of Tennessee that that Company pay the true cash value of the automobile to the rightful owner thereof," and that Fidelity Insurance Company made such payment in Bell's behalf.

It is also pointed out in appellee's brief that under the terms of the warranty the Auction Company limited its liability to the sale price of the vehicle less 2% thereof per month following sale for depreciation; that the warranty of title is dated February 4, 1955, and the subrogation agreement bears date July 16, 1955; that if the Auction Company was in fact guarantor of the title it would have been liable only for the sum of $846, which represents the loss, less 2% from date of warranty, but that the insurance company paid the sum of $940 which is a further indication that the title warranty was an insurance contract or agreement between Fidelity Insurance Company and L. W. Bell.

It is also insisted by counsel for appellee that the wording of the release and subrogation agreement executed by L. W. Bell to Fidelity Insurance Company of Tennessee is conclusive of the fact that the insurance contract was between the company and Bell rather than between the company and the Maney Auto Auction, as insisted upon by appellee. The "subrogation agreement" reads in pertinent part, that in consideration of $940.00 paid to E. C. Stanfield the appellant, Bell, releases and forever discharges Fidelity on account of its liability to the undersigned Bell by reason of insurance coverage with reference to any loss occurring by reason of the undersigned's failure to receive clear title to the therein described motor vehicle. In said agreement L. W. Bell transferred and assigned to Fidelity Insurance Company all his right, title and interest in and to the title of the motor vehicle and authorized and empowered Fidelity to take such action as, in its sole discretion should be meet and proper so as to collect from any person liable on said title to said motor vehicle and agreed that "any legal proceeding instituted under the term of this Release and Subrogation Agreement shall be under the exclusive direction and control of Fidelity."

As we have pointed out, no ruling of the court was invoked on the demurrer to the pleas, but parties may take issue on an immaterial or defective plea, and if plaintiff joins issue on a plea which constitutes no defense, and if the evidence establishes the truth of its averments, the de-

fendant is entitled to judgment thereon. White v. Yawkey, 108 Ala. 270, 19 So. 360, 32 L.R.A. 199; Philip Olim & Co. v. C. A. Watson & Sons, 204 Ala. 179, 85 So. 460; Gay v. Cummings, 23 Ala.App. 8, 122 So. 313.

If this recital in the court's judgment or "decree" as it is termed, "The court further finds that the making of contracts of insurance in the State of Alabama is an interstate act and that the making of contracts is the doing, transacting or carrying on or engaging in business within the State," is to be understood as the judgment of the court that the evidence establishes the truth of the pleas that the contract of insurance was made or entered into in this state, we are of the opinion that the evidence does not sufficiently establish the truth of the pleas and that they should not have been sustained. The judgment will be reversed.

As we have already pointed out, the record shows no ruling on the demurrer to the pleas. However, by its "decree" the court seems to have determined that the matters stated therein constituted defenses, and that the proof sustained the pleas. For this reason, in the event of a retrial, we deem it well to call the court's attention to some of the applicable principles of law.

With reference to the court's order and to the argument of counsel for appellee that the evidence shows that the contract of insurance, which appellee insists is the basis of this suit, was made or entered into in Alabama, and that since the insurance company had not qualified to do business in this State, the said contract is null and void and the insurance company cannot maintain this suit under the provisions of Section 191, Title 10, Code, supra, we point out that in Hartford Fire Insurance Co. v. Galveston, H. & S. A. Ry. Co., Tex.Com. App., 239 S.W. 919, 924, the Texas Court said:

" * * * it has been frequently held that insurance companies paying losses under policies issued by them without complying with the requirements of the laws of the state in which the property insured was situated were subrogated to the cause of action arising in favor of the insured against the party whose actionable wrong caused the loss, and that they could maintain an action thereon in the courts of such state. 4 Cooley on Ins. p. 3896; 14 R.C.L. pp. 866, 867; St. Louis, I. M. & S. Ry. Co. v. Commercial Union Ins. Co., 139 U.S. 223, 11 S.Ct. 554, 35 L.Ed. 154; Phoenix Ins. Co. v. Pennsylvania R. Co., 134 Ind. 215, 33 N.E. 970, 20 L.R.A. 405; The Manistee, Fed.Cas.No.9027, 5 Biss. 381, affirmed Fed. Cas.No.9028, 7 Biss. 35; Lumbermen's Mutual Ins. Co. v. Kansas City, Ft. S. & M. Ry. Co., 149 Mo. 165, 50 S.W. 281, 285; Marine Ins. Co. v. St. Louis, I. M. & S. Ry. Co., C.C., 41 F. 643."

The court pointed out that statutes requiring foreign companies before doing business in a State to comply with the requirements of its laws are intended for the protection of its citizens and not to absolve the company from liability on its contracts made in said State citing, among others, Brooklyn Life Insurance Co. v. Bledsoe, 52 Ala. 538. The court observed:

"Plaintiff in error was bound to pay the losses incurred in shipping the cattle to the owners, according to the terms of the policies. This it did, and thereby complied with and discharged its obligation to them, and received from them specific assignments of and became subrogated to, their claims against the carriers. When this was done the illegal contract was completely executed. Each of the parties thereto had done all that was ever agreed or contemplated to be done for the benefit of the other. There was nothing left undone between them to be enforced by an action in the courts. As a result of the execution of this contract, plaintiff in error became invested with the actual title to and ownership of the claims for damages which accrued to

the owners on account of the manner in which defendant in error handled the cattle.

"The enforcement of these claims against defendant in error was not in any sense the enforcement of the original contract of insurance. They did not originate in such contract. They had their origin in the failure of the carriers to discharge the duty they owed to the owners of the cattle shipped over their lines. They were valid and enforceable against defendant in error in the hands of the owners. They were assignable. Were they rendered invalid and unenforceable, and was defendant in error relieved from liability therefor because they were transferred to plaintiff in error in connection with and in consideration of the payment of the losses covered by its said policies of insurance?

"It frequently happens as a result of the execution of an illegal contract that in consideration thereof some new title to property or some new property right vests in one of the parties to such contract. When such contract has been fully executed, and suit is brought, not for the enforcement thereof, but for a recovery upon or enforcement of the new title or right thus acquired relief will not be denied." Citing numerous cases. See, also, Annotation, 138 A.L.R. 1174, et seq.

The court further observed "The general rule is that the defense of illegality is confined to the parties to the contract and is not available to third parties to defeat a just claim against themselves," citing, among other authorities, 13 C.J. p. 508, Section 458; 17 C.J.S. Contracts § 282. See, also, Marx v. Lining, 231 Ala. 445, 165 So. 207.

The judgment is reversed and the cause is remanded.

Reversed and remanded.