## GULF, COLORADO & SANTA FE RAILWAY COMPANY v. LEATHERWOOD & FERGUSON.

### Decided May 31, 1902.

**1.—Railway Company—Connecting Carriers—Through Contract.**

Where a carrier has agreed to transport freight to its destination over its own and a connecting line it is immaterial whether or not an agency or partnership exists between it and such connecting line, and it is responsible for safe carriage and for damage from neglect occurring on the connecting line as well as on its own.

**2.—Same—Evidence.**

In an action against a carrier for damages to freight occurring on the line of a connecting carrier, evidence that it was customary for the defendant to contract to carry freight to any point on the connecting line was admissible in corroboration of other evidence that the contract in question, the terms of which were in dispute, had been so made.

**3.—Same—Interstate Commission—Tariff Rates.**

Until a tariff rate of the Interstate Railroad Commission is established and published as required by law, it is not binding on the public, and a contract for a different rate is valid and enforcible.

**4.—Same—Proof of Tariff Rate.**

Proof of the publication of a Commission tariff rate is insufficient where it fails to show how it was published or what publication thereof was required by the Commission, and evidence that it was on file in a railroad office and acted on by that company does not suffice to show that it has been legally established.

**5.—Same—Shipping Contract—Proof—Secondary Evidence.**

Where the defendant carrier was alleged to be in possession of the contracts of shipment, and after notification to produce them, defendant introduced secondary evidence of them, the court did not err in refusing to strike out such evidence upon defendant's subsequently offering the written contracts in evidence.

**6.—Same—Damage to Cattle—Delay—Overcharge.**

Where the shipper had a contract for a lower rate than that demanded at destination, his refusal for a time to pay the exorbitant rate for which the cattle were held will not prevent him from recovering damages for injuries to them occasioned by ill treatment while they were unjustly detained.

Appeal from Johnson.   Tried below before Hon. W. H. Bledsoe, Special Judge.

*J. W. Terry* and *A. H. Culwell,* for appellant.

*S. C. Padelford* and *W. J. Ewing,* for appellees.

TEMPLETON, ASSOCIATE JUSTICE.—The appellees, Leatherwood & Ferguson, had a lot of cattle at Alexandria, La., a point on the line of the Texas & Pacific Railway Company, which they desired to ship to their ranch in the Indian Territory, which is located between Elgin, Kan., and White Eagle Ok., stations on the line of the Atchison, Topeka & Santa Fe Railway Company.   The line of the Texas & Pacific Company extends from Alexandria to Fort Worth, Texas, where it con-

nects with the line of the Gulf, Colorado & Santa Fe Railway Company, which extends from that point to Purcell, Ok., where it connects with the line of the Atchison Company. Leatherwood & Ferguson applied to the Texas & Pacific Company for rates from Alexandria to Elgin. E. L. Sargent, the general freight agent of said company, asked P. H. Goodwyn, the general freight agent of the Gulf, Colorado & Santa Fe Company, to join him in making a rate of $55 per car, the Texas & Pacific line to receive one-half and the Santa Fe line to receive one-half, and Goodwyn consented to do so. This rate was quoted to Leatherwood & Ferguson, and was accepted by them. Seven carloads of cattle were received by the Texas & Pacific Company and carried by it to Fort Worth. When the cattle were delivered for shipment, live stock contracts were entered into between the Texas & Pacific Company and Leatherwood & Ferguson, which declared that said company had contracted to transport seven carloads of cattle from Alexandria to Fort Worth, consigned to Leatherwood & Ferguson, Elgin, "at the rate of tariff per car." The contracts contained provisions limiting the liability of said company to its own line, and it was declared that the conditions of the contracts should inure to the benefit of all carriers transporting the cattle, unless otherwise stipulated, but that in no event should one carrier be liable for the negligence of another. When the cattle reached Fort Worth they were received by the Gulf, Colorado & Santa Fe Company and transported to White Eagle, the destination having been changed to that point by an agreement made at Fort Worth between Leatherwood & Ferguson and the agents of the Texas & Pacific Company and of the Gulf, Colorado & Santa Fe Company, it being understood that the change was not to affect the freight rate which had been agreed on. When the cattle arrived at White Eagle, Leatherwood & Ferguson tendered to the railway agent at that place the sum of $55 per car as freight charges, but the agent refused to receive same, and demanded payment of freight at the rate of $86 per car. Leatherwood & Ferguson at first declined to pay the amount demanded, but after some delay paid said amount and received the cattle. During the time the cattle were held by the railway agent they were kept confined in pens, without being fed or watered, from the effects of which treatment a number of them died and the remainder were depreciated in value. Leatherwood & Ferguson brought this suit against the Gulf, Colorado & Santa Fe Company to recover the excess freight charges paid and the damages occasioned by the detention and ill treatment of the cattle. They obtained judgment on a trial before a jury and the company has appealed.

Appellant complains of that paragraph of the court's charge which reads as follows: "You are instructed that if you find from the evidence that the Texas & Pacific Railway Company and the defendant Gulf, Colorado & Santa Fe Railway Company entered into a contract with plaintiffs to transport and carry the cattle mentioned in plaintiffs' petition from Alexandria, La., to Elgin, Kan., at the freight rate of

$55 per 36-foot car, and if you further find from the evidence that the plaintiffs accepted said rate, and if you further find that said cattle under said contract were shipped from Alexandria to Fort Worth, Texas, and that when they arrived at Fort Worth, by an agreement and contract entered into between plaintiffs and the defendant, the shipping destination was changed from Elgin, Kan., to White Eagle, O. T., and that it was agreed and contracted by the defendant that it would ship said cattle from Fort Worth, Texas, to White Eagle, O. T., for the plaintiffs and deliver same to plaintiffs at White Eagle for its proportion of the same contract price, to wit, $55 per car, from Alexandria to White Eagle, and that under said last agreement the said cattle were delivered to the defendant and were by the defendant and connecting carriers transported from Fort Worth to White Eagle, and that when said cattle arrived at White Eagle the plaintiffs tendered to the agent of the railway company at said place the sum of $55 per car as the freight rates for said cattle; and if you further find that the railway agent at White Eagle refused to accept said amount of $55 per car, but exacted the sum of $86 per car, instead of the $55 per car; and if you further find from the evidence that the said cattle were kept in the stock pens at White Eagle after said tender was made and refused by the railroad agent; and if you further find from the evidence that the said cattle for said time were not fed and watered and that plaintiffs were not permitted to take same and feed and water them, or were not given permission to feed and water them; and if you further find from the evidence that by reason of such detention in said cattle pens at White Eagle by the railroad agent the said cattle were depreciated in value and some of them died, then you are instructed that the plaintiffs are entitled to recover the market value at White Eagle of the cattle whose death was caused by the detention, and the difference in the market value of the remainder of said cattle at White Eagle at the time they should have been delivered in the condition which they were when the tender of said freight rates as agreed upon was made and the market value of said cattle at White Eagle in the condition in which they were delivered to plaintiffs by the railroad company, if you find from the evidence that such depreciation was caused by such detention."

Appellant's first proposition is, that under the contract upon which the cattle were carried, the liability of appellant was limited to its own line, and the charge made appellant absolutely liable for the acts of the agent of the Atchison Company, at White Eagle, without even submitting the question of agency to the jury, and the charge was on the weight of evidence. The pleadings of appellees presented the issue that appellant contracted to carry the cattle from Fort Worth to White Eagle, and the evidence introduced by them on this issue was sufficient to warrant a finding that such was the case. Appellant's general freight agent agreed with the general freight agent of the Texas & Pacific Company on a through rate and on the share of such rate to be received for the transportation of the cattle from Fort Worth to final destination.

This was done without conference with the Atchison Company. The contract of the Texas & Pacific Company was to carry the cattle from Alexandria to Fort Worth. When the cattle reached Fort Worth, the destination was, by consent of the parties, changed to White Eagle. The written contracts with the Texas & Pacific Company were surrendered, and the cattle were rebilled to appellant from Fort Worth to White Eagle, and through passes were issued to the parties accompanying the cattle. No changes of any kind were made when the cattle reached the terminus of appellant's line, and the cattle were carried to White Eagle over the line of the Atchison Company without the issuance by that company of any additional papers. The papers on which the cattle were transported from Fort Worth to White Eagle were not produced by appellant on the trial, although N. S. Ferguson, who is one of the appellees and who accompanied the cattle, testified that when the change of destination was agreed on at Fort Worth the agent of appellant gave him a bill of lading, or some other contract in writing, with pass attached, through from Fort Worth to White Eagle. If these papers had been of the kind usually issued by intermediate carriers, it seems that they should have been produced, and it is not an unreasonable inference that they were not produced because appellant had contracted, as shown by Ferguson's testimony, to carry the cattle through to White Eagle. If appellant contracted to transport the cattle from Fort Worth to White Eagle it was bound to perform such contract. It could legally bind itself to carry the catle beyond its own line, and if it did so, it is liable for the acts of those to whose care it committed the cattle. Railway v. Allison, 59 Texas, 198. The charge submitted this theory of the case in a manner justified by the pleadings and evidence. The case relied on by appellees is not one where the carrier has contracted to transport freight to the terminus of its own road and to deliver same to a connecting carrier, and has limited its liability to its own line. The case here presented is where the carrier has agreed to transport freight to the point of final destination over its own and connecting lines. In such case it is immaterial whether a partnership or agency existed between the contracting carrier and the connecting carrier. Having undertaken to carry the property to its destination, it is responsible for safe carriage and proper treatment, and is answerable for damages occasioned by neglect, no matter whether the same occurs on its own line or on some other road.

What is said above is sufficient to dispose of all the assignments which relate to the proposition that appellant was not bound by, and was in no way responsible for, the acts of the railway agent at White Eagle, because he was the agent of the Atchison Company and was not the agent of appellant. We will add, however, in this connection, that we think there was no error in permitting appellee's to prove that it was the custom of appellant to contract to carry freight originating on its own line to any point on the line of the Atchison Company. The evidence tended to show the relations existing between the two companies and to corroborate the testimony of appellees that such contract

was made in this case. We do not mean to hold that this evidence alone was sufficient to establish partnership or agency.

The other objections to the charge relate to a matter which is presented in various forms under many different assignments of error. Appellant attempted to show that the rate charged by the agent at White Eagle was the regular tariff which had been fixed with the approval of the Interstate Commerce Commission, the contention being that such rate was binding on all parties regardless of any agreement for a lower rate. It was shown that the rate charged by the agent at White Eagle was that found in the printed tariff furnished him by his employer. The chief clerk in the office of appellant's general freight agent testified that a similar printed tariff was on·file in said office, and appellant offered to prove by said clerk that said tariff had been established, published and filed with the commission. His testimony to that effect was excluded because his answers to other questions showed that he did not know, of his own knowledge, the facts to which he proposed to testify. He seems to have assumed that, because the printed tariff was on file in the office and was acted on by the company, that it had been duly and legally established and published and filed with the commission. We think such testimony was properly excluded, but even if it had been admitted it would not have been sufficient to show that the tariff had been fixed as required by law. He proposed to testify that the tariff had been·published, but did not offer to testify how it had been published, or what publication had been required by the commission, or that it had been published as required by the commission. It is not clear, either, that his testimony would have shown that it had been established so as to make it binding. Appellees had no notice of the alleged rate. Until the. tariff was established and published as required by law, it was not binding on the public, and a contract for a different rate would be valid and enforcible. Railway v. Horne, 59 S. W. Rep., 134. Unless the tariff rate charged had been established and published in such a manner as to make it binding, the stipulation in the contracts made by appellees with the Texas & Pacific Company to pay "at the rate of tariff" would not render them liable to pay more than the rate agreed on. The written contracts executed by appellees can not be construed to bind them to pay a tariff which had not been legally established.

Complaint is made of the action of the trial court in permitting the introduction of a letter from the general freight agent of the Texas & Pacific Company to appellees quoting a rate of $55 per car. This was not error. Appellant and the said company had agreed on the rate to be charged, and the letter was written in accordance with the agreement.

Appellant was alleged to be in possession of the written contracts of shipment and was notified to produce· same. The contracts not having been produced, appellees proved same by secondary evidence. Appellant then introduced some· of the contracts and moved to strike out the testimony introduced by appellees in relation thereto. The

motion was overruled, and we approve the action of the trial court.. If appellant desired to prevent such evidence from going to the jury it should have produced the written contracts in the first instance. It could not hold back the written instruments and force appellees to prove same by secondary evidence, then offer the written evidence, and have the evidence already introduced stricken out.

Testimony of witnesses showing the effect on the cattle of the ill treatment they received at White Eagle was properly admitted. In Railway v. Wright, 1 Texas Civil Appeals, 403, it was held that a witness could not give his opinion as to the amount of damage per head to stock caused by ill treatment, delay, etc., for the reason that the witness, in estimating the damage, might take into consideration items of damage not pleaded, or base his opinion on a rule of damage which was not the correct measure of damages. No such proof was made in this case. The witnesses gave their opinions as to the damage per head to the market value of the cattle, which was the true measure of damages. It is clear that in arriving at the amount of damage. the witnesses confined themselves to the legitimate items of damage to be taken into consideration in making the estimate.

It is insisted that appellees should have promptly paid the charges demanded and received the cattle and thereby mitigated the damages. The position is untenable. If appellees had a contract for a lower rate than that charged, the mere fact that they refused; for a time, to pay the exorbitant rate, would not prevent them from recovering damages for the injuries to the cattle occasioned by the ill treatment to which they were subjected while they were unjustly detained.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.