MARY C. BONNER ET AL. V. W. B. OGILVIE.

Decided June 16, 1900.

**1.  Minor—Suit by Guardian as Next Friend.**

Where plaintiff in trespass to try title died pending suit, and his widow and minor son were substituted as plaintiffs, the wife suing as guardian for the son, alleging her appointment as such in another State, and seeking to recover for him his interest in the land, a judgment for plaintiff will not be disturbed on the ground that the wife, as a foreign guardian only, could not prosecute a suit in Texas, since, being the mother and natural guardian of the child, she had the right to prosecute the suit as next friend, and, in the absence of objection on the trial, her suit will be treated as having been prosecuted in that capacity, and her allegation as to suing as guardian will be regarded as a mere technical inaccuracy.

**2.  Parties—Death of Joint Defendant.**

Where an action of trespass to try title was brought against a husband and wife as defendants, and the wife died pending the suit, plaintiffs had the right to prosecute their action to judgment against the husband alone, without making the heirs or legal representatives of the wife parties, and the judgment would be binding as to the husband's interest in the land, whatever that interest might be.

**3.  Same—Admissions—Probate of Will.**

Where the wife was a codefendant with the husband and died pending the suit, an admission by him on the trial that her will, devising all her property to him, was duly probated, is to be treated as an admission that the will was legally probated in Texas, and that everything had been done necessary to vest the title of all her property in him.

**4.  Judgment by Collusion—Third Party's Right to Attack.**

Plaintiff, by virtue of a levy under a judgment held by him against defendant, bought the land in controversy, and brought suit against defendant in trespass to try title therefor. Defendant claimed that he held the legal title to the land in trust for his son, the heir of his deceased wife whose moneys he had used in the purchase of the land, and that, in a suit by the son against himself (brought after the execution sale to plaintiff) the trust had been established and the land decreed to belong to the son. Held, that the plaintiff, not being a party to the judgment in such suit between the father and son, was not bound by it, and was entitled to prove all the facts concerning it to show that it was collusive and fraudulent.

**5. Trust in Favor of Son—Deceased Mother's Property Used by Father.**

See the opinion for facts held insufficient to show that the title of land was held by a father in trust for his son by reason of an alleged claim that the father had used means of his wife, of whom the son was sole heir, in making payment for the land.

APPEAL from Dallas.   Tried below before Hon. W. J. J. SMITH.

O. S. Kennedy and Gillespie & Dye, for appellants.

Wharton & Young, for appellee.

TEMPLETON, ASSOCIATE JUSTICE.—This is an action of trespass to try title brought by W. B. Ogilvie against Mary C. Bonner and her husband, M. A. Bonner.   The land sued for consists of two tracts, one containing 300 acres and the other 35 acres.   W. B. Ogilvie died pending the suit, and his wife and children, who are the defendants in error, prosecuted the suit to judgment against M. A. Bonner alone, his wife and codefendant, Mary C. Bonner, having died before judgment.

One of the children of W. B. Ogilvie is a minor, and his mother, the surviving wife, is the guardian of his estate, having been appointed as such in the State of Louisiana.   The plaintiff in error contends that she can not sue in this State to recover her ward's interest in the land in controversy.   On the trial in the court below the plaintiff in error admitted that W. B. Ogilvie died intestate; that there was no administration on his estate, or necessity therefor; that the defendants in error, naming them, were his sole heirs, and had been regularly made parties. The petition of the defendants in error alleged the death of W. B. Ogilvie pending the suit, and that they were his sole heirs, and sought to prosecute the suit brought by him to judgment.   It was further alleged that Mrs. Ogilvie was the guardian of the person and estate of the minor son, having been appointed in Louisiana, and she sought to recover for him his interest in the land sued for.   The court permitted the case to proceed to trial, and rendered judgment for defendants in error as prayed for.

The plaintiff raised no question as to the right and capacity of Mrs. Ogilvie to recover her minor son's interest in the land until after judgment.   Under these circumstances the plaintiff in error can not complain.   Even if it should be held that the admission of the plaintiff in error that the heirs of W. B. Ogilvie, including the minor son by name, had been regularly made parties, was not a waiver of his right to raise the question presented, there are other reasons why his contention can not be sustained.   Mrs. Ogilvie was the mother and natural guardian of her minor son, and it was her duty to protect his interests, and she was a proper person to sue as next friend when such suit was necessary to accomplish that purpose.   Her appointment as legal guardian in Louisiana would not give her authority to sue as such guardian in Texas, but it would not deprive her of the power to sue in this State as next friend, where it was necessary to do so and where she was permitted to do so

by the court in which the suit was brought. The fact that, in her petition, she described herself as the legal guardian, appointed in Louisiana, of the estate of her minor son, would not have the effect to make the suit in behalf of her ward as one brought solely in that capacity. Her petition alleged all the facts which entitled her to sue and recover as next friend; and the purpose of her suit, so far as the minor was concerned, was to recover his interest in the land in controversy. In such case it was not necessary for her to formally describe herself as next friend, but, the facts appearing which would authorize her to maintain the suit as next friend, the courts should regard her suit as brought in that capacity.

In Martin v. Weyman, 26 Texas, 468, in discussing a judgment rendered in a suit brought by a father in behalf of his minor children, the father in the petition having described himself as the natural guardian and not as next friend, our Supreme Court says: "And surely in our courts it can not be insisted that it requires any particular technical phraseology to constitute this relationship—that is, the relation of next friend—between the infant and the party by whose aid he seeks to assert his rights. It is very evident from the language of their petition that their father placed himself before the court as their next friend for the purpose of enabling the plaintiffs to prosecute their suit; and having been recognized by the court in this character by its action in adjudicating upon their petition, it can not now be held void for a mere technical inaccuracy in the description of the capacity in which he appears." In the case before us the judgment rendered was that the minor, naming him, by his said guardian, Mrs. Ogilvie, for his own use and benefit, recover with his coplaintiffs, the land in controversy. In Railway v. Styron, 66 Texas, 424, the doctrine announced in the case just cited is reaffirmed, and a judgment in favor of Styron, who sued as next friend, for the use and benefit of the minor, is approved, although such judgment was not in strict compliance with the law.

When Mary C. Bonner died she left a will which the plaintiff in error assumes was probated in Louisiana, and he insists that it was error for the court below to proceed to judgment against M. A. Bonner alone. It was admitted on the trial that the will of Mary C. Bonner was duly probated, and that by the will all her property was devised to M. A. Bonner. We think that this is tantamount to an admission that the will had been legally probated in Texas, and that everything had been done that was necessary to vest the title of all property owned by her in the devisee. But, independent of the admission, it was agreed that M. A. Bonner was the sole heir of Mary C. Bonner, and this alone was sufficient to vest the title in him, even if the will had been excluded. Besides, M. A. Bonner was one of the original defendants, and the defendants in error, plaintiffs below, could, if they chose to do so, prosecute their suit against him to judgment without making the heirs or legal representatives of Mary C. Bonner parties. He was not sued as executor, but it was alleged that after the death of Mary C. Bonner he held the title claimed by her, and the judgment against him is binding

as to his interest in the land in controversy at the time of its rendition, no matter what was the extent of his interest, or when or how it was acquired.

It appears that M. A. Bonner bought one of the tracts of land in controversy in 1874 and the other in 1877. He became indebted to W. B. Ogilvie, and on May 17, 1895, Ogilvie brought suit on the debt and caused an attachment to be issued and levied on both tracts. He obtained judgment with a foreclosure of the attachment lien. The land was sold under the foreclosure of April 7, 1896, and Ogilvie became the purchaser. Bonner's contention is that, though he held the legal title to the land, it was paid for with means inherited by his son, P. W. Bonner, from his mother, and asserted a resulting trust in favor of P. W. Bonner. In the latter part of 1895, P. W. Bonner sued M. A. Bonner, and secured judgment on March 28, 1896, establishing the trust and vesting in him the legal title to the land, and also for the sum of $6500. On April 6, 1896, he deeded the land to his stepmother, Mary C. Bonner, who in turn devised it to M. A. Bonner. Defendants in error claim that the land was paid for by M. A. Bonner out of his own means; that the judgment in favor of P. W. Bonner was collusive and fraudulent and was procured to defeat Ogilvie's attachment lien. The issue as to whether the land belonged to M. A. Bonner at the time of the levy of Ogilvie's attachment was submitted to the jury under instructions the correctness of which is not questioned. The jury found, in effect, that the land was then the property of M. A. Bonner, and was paid for out of his own means, and not with means belonging to P. W. Bonner. The plaintiff in error insists that the evidence is not sufficient to support this finding of jury.

It is not necessary to discuss the evidence at length. It is sufficient to say that P. W. Bonner's mother owned property situated in Louisiana of the value of about $4000; that the Bonners moved to Texas in 1873; that Mrs. Bonner converted her Louisiana property into money before coming to this State; that she died soon after reaching Texas, leaving her said son and her husband, M. A. Bonner, as her only heirs; that M. A. Bonner mixed her property with his own and used it as he pleased; that he engaged in the mercantile business and in buying and selling lands, horses, and cattle; that he bought the lands in controversy after his wife's death, taking the deeds in his own name and paying therefor out of money received in the course of his said business, the amount paid for the lands not being shown, and it not appearing whether the amount paid was in excess of his equitable interest in all the property held in his name. It is not shown whether he ever settled with his son for his interest in his mother's estate. It was shown that M. A. Bonner paid taxes on the land in controversy and received the rents thereof, and always treated it as if it was his own; that he sold the 300 acres tract and bought it back, taking the deed in his own name, although P. W. Bonner was then of age and lived in Texas near the land, while M. A. Bonner then resided in Louisiana; that he tried to exchange the 300 acres for city property; that when Ogilvie sued him and attached

the land he signed a written agreement for judgment with a foreclosure of the lien in order to secure a stay of execution and order of sale until December 1, 1896, and at the same time represented to Ogilvie's attorneys that he was the sole owner of the land; that about the time the stay expired he tried to get Ogilvie to let his wife, Mary C. Bonner, take the title to the land with a lien thereon to the extent of Ogilvie's debt.

In regard to the suit of P. W. Bonner against M. A. Bonner, it was proved that the fee of P. W. Bonner's attorney was secured by the note of M. A. Bonner and his wife; that M. A. Bonner had no attorney representing him; that the suit was brought about the time the stay of execution expired; that about ten days after the judgment was rendered. P. W. Bonner deeded the land recovered by him in that suit to M. A. Bonner's wife; that on January 23, 1899, P. W. Bonner executed to M. A. Bonner a release of the judgment for $6500. The Bonners did not undertake to explain these transactions, and P. W. Bonner did not even testify on the trial. It was not shown that P. W. Bonner ever asserted his alleged trust until after the levy of Ogilvie's attachment. He was then about 27 years old. Under the circumstances we think that the conclusion arrived at by the jury, that M. A. Bonner owned the property and was not holding it in trust for P. W. Bonner, was fully warranted.

The plaintiff in error insists that the court below erred in submitting to the jury the issue of whether the judgment in favor of P. W. Bonner against M. A. Bonner was collusive. As the case was submitted on special issues, the plaintiff in error could not have been injured by the submission of the issue complained of. Ogilvie, not being a party to the judgment, was not bound by it, and was entitled to prove all the facts concerning it as circumstances tending to establish his theory that the claim of a trust in favor of P. W. Bonner was fraudulent.

Neither will M. A. Bonner's claim of title acquired after the levy of Ogilvie's attachment avail him as a defense. In order to establish his after-acquired title based on the judgment in favor of P. W. Bonner and his deed to Mrs. Bonner and her devise to the plaintiff in error, he was bound to prove that he held the land in trust for P. W. Bonner at the time it was levied on by Ogilvie. The jury found that he did not so hold it, but that it was then his property, hence his alleged title acquired through and under P. W. Bonner is no defense to the suit of Ogilvie's heirs. If the land in controversy was owned by M. A. Bonner in his own right at the time of the levy, and the jury has found that it was, then the defendants in error are entitled to recover.

There is no error in the judgment, and it is affirmed.

*Affirmed.*