## SOUTHERN KANSAS RAILWAY COMPANY OF TEXAS v. C. B. COX.

### Decided April 28, 1906.

**1.—Freight Rates—Necessity for Publication.**

The freight rates of railroads approved by the Interstate Commerce Commission are not binding upon the public unless posted and published as required by Act of Congress.

**2.—Routing Shipment—Contributory Negligence—Relevant Testimony.**

Where the carrier neglected to note on the waybill and shipping contract of a shipment of mules that they were to be unloaded and fed at a certain point en route, as requested by the shipper, and in a suit for damages for such neglect the carrier plead that the plaintiff was guilty of contributory negligence in not having such omission corrected as soon as discovered after the transportation had begun, the testimony of the plaintiff to the effect that at a station on the route he saw a man in the depot whom he took to be defendant's agent and called his attention to the omission and suggested that he had better wire about it, was relevant and material on the issue of contributory negligence, and this, whether the man spoken to was or was not defendant's authorized agent.

**3.—Carrier—Deviating Shipment—Liability.**

Where a carrier deviates a shipment from the route designated by the shipper it becomes liable for all damages resulting from its act, whether proximately or not.

ON REHEARING.

**4.—Insufficient Assignment of Error.**

An assignment of error which embraces several separate and distinct questions of law will not be considered because too general.

**5.—Unlawful Intention of Shipper—No Defense to Carrier, When.**

That the shipper had an arrangement with a third party by which the stock was to be unloaded at an intermediate point, and the shipper was to receive from such third party a rebate for the use of the cars from such point to the destination named in the shipping contract, can not affect the right of the shipper to have his stock routed as requested, with the privilege of unloading and feeding at a designated point, upon paying the customary freight rates.

Appeal from the District Court of Carson County. Tried below before Hon. B. M. Baker.

*J. W. Terry* and *H. E. Hoover,* for appellant.—The shipment from Panhandle being an interstate shipment, intended for Fort Scott, but billed to Memphis, and the only and undisputed evidence in the case being that the stock were billed to Memphis instead of to Fort Scott, in order thereby to procure a less rate of freight than the regular rate in force between Panhandle and Fort Scott, rendered it an illegal and void transaction, upon which no action could be maintained or damages recovered, and, as between the plaintiff and the defendant, no recovery could be had for anything done or promised. Seeligson v. Lewis, 65 Texas, 215; San Antonio & A. P. R. R. Co. v. Clements, 20 Texas Civ. App., 499; Missouri, K. & T. Ry. Co. v. Bowles, 40 S. W. Rep., 899; Houston & T. C. Ry. Co. v. Dumas, 43 S. W. Rep., 609; Gulf, C. & S. F. Ry. Co. v. Johnson, 71 Texas, 621, citing Welch v. Wesson, 6 Gray, 505; Wiggins v. Bisso, 92 Texas, 222; Central Transportation Co. v. Pullman Car Co., 139 U. S., 24; McGourkey v. Toledo & Ohio Ry. Co., 146 U. S., 536; Section 7, Interstate Commerce Act, p. 53, also section 10 et seq.; 2 Parsons on Contracts (7th ed.), 807; 9 Am. and Eng. Ency. of Law (1st ed.), pp. 880-881.

In a suit for damages for failure to perform a duty, or for breach of contract, plaintiff can only recover such sum as it would have cost him to have prevented the damages. The evidence in this case showing that plaintiff discovered the error in billing in time to have prevented the damages, that he had the means to do so, but did not, it was error to submit to the jury the question of whether or not he acted with ordinary care. The error being discovered, and the knowledge of how and the means to prevent injury being at his command, it was his duty to use them, and it was error to submit the question to the jury as to whether or not he acted as an ordinarily prudent person would have acted, especially so in view of the fact that evidence had been permitted to the effect that another person had informed him that the stock would go through all right. Texas & P. Ry. Co. v. Young, 60 Texas, 201; Texas & Pac. Ry.

Co. v. Rea, 65 S. W. Rep., 1117; Western U. Tel. Co. v. Hoffman, 80 Texas, 424; Texas & P. Ry. Co. v. Newton, 30 S. W. Rep., 476; Gulf, C. & S. F. Ry. Co. v. Simonton, 2' Texas Civ. App., 562; Southern Kan. Ry. Co. v. Isaacs, 49 S. W. Rep., 690.

*Turner & Boyce,* for appellee.

SPEER, Associate Justice.—Appellee instituted this suit against appellant to recover damages growing out of the latter's failure to note on the waybill and shipping contract of a shipment of mules from Panhandle, Texas, to Memphis, Tennessee, that the same were to be unloaded and fed at Fort Scott, Kansas. Appellant answered the suit, pleading specially that the contract was in violation of law and therefore void, and that plaintiff himself was guilty of contributory negligence. The case was tried before a jury and resulted in a verdict and judgment against appellant.

The conclusion which we have reached, that there is nothing in appellant's pleadings or the evidence showing that it has complied with the requirements of law in the promulgation of its rates under the Interstate Commerce Act, disposes of the greater number of its assignments of error here. (Atlanta, K. & N. W. Ry. Co. v. Horne, 59 S. W. Rep., 134; Gulf, Colo. & Santa Fe Ry. Co. v. Leatherwood, 69 S. W. Rep., 119.) We find absolutely nothing in the pleadings or evidence to indicate that appellant had established or published its rates in such manner as to make them binding under the Act of Congress regulating interstate commerce.

The testimony of appellee concerning the conversation had by him with appellant's agent at Miami, concerning the notation on the contract executed at Panhandle, was admissible upon the issue of his contributory negligence in failing to take steps to have his mules properly routed after having discovered appellant's dereliction in this respect. This was an issue tendered by appellant, and whether the person at Miami was actually appellant's agent at that place or not, and whether if he was he had any authority to bind appellant by his statements, are altogether immaterial to the admissibility of the evidence, since the circumstances of this conversation with a man whom appellee took to be appellant's agent was proper for the consideration of the jury, as bearing upon his failure to take further steps to have the mistake of the company corrected. Indeed, the writer, at least, doubts that the doctrine of avoidable consequences here attempted to be invoked has any application to a case like this.

The pleadings and evidence show that it was the purpose of appellee, in routing his mules by Fort Scott, Kansas, to unload and sell them upon that market. There was evidence to the effect that appellant, through its agent who made the contract, knew of this purpose. The failure, therefore, to note on the waybill and contract that the stock were to be unloaded at Fort Scott, Kansas, and the deviation to another route resulted in appellee's sustaining the injuries for which damages were awarded him by the jury. Having deviated the stock to a different route, appellant became liable for all damages, whether proximately

resulting from its act or not. (Hutchinson on Carriers, sec. 190; 6 Cyc., 383.) It follows from this that testimony was properly admitted as to the fact that appellee had made arrangements with a horse and mule company at Fort Scott for handling his stock, that this company would have paid him a rebate for the use of his cars from that place on to Memphis, that his mules contracted "barn fever" at the latter place, and that he incurred certain expenses in reshipping to Fort Scott.

There was nothing in the evidence to require or even to justify the trial court in submitting to the jury the issue whether or not appellee made appellant's agent his agent in the matter of billing out the stock.

We find no fault with the tenth paragraph of the court's charge of which appellant could complain. Clearly, under the facts appellee did not waive or intend to waive any of his instructions to appellant's agent with reference to routing his stock.

All assignments are overruled and the judgment is affirmed.

### ON MOTION FOR REHEARING.

In the opinion filed on the original hearing of this case, we stated that there was nothing in the pleadings or evidence to indicate that appellant had established or published its rates in such manner as to make them binding under the Acts of Congress regulating interstate commerce, and appellant now complains in its motion for rehearing that its failure in this respect was due to the action of the trial court in sustaining an exception to its answer, of which action it complained on the original submission by assignment number 4 in its brief. We did not consider this assignment because we were then, and still are, of the opinion that such assignment is too general, embracing, as it does, a complaint that the court erred in sustaining the "plaintiff's first and second special exceptions, contained in its supplemental petition to the defendant's original answer," when these exceptions present entirely different questions of law. Appellee's special exception number 1 attacks appellant's answer, alleging the want of authority in the agent to make the contract declared on, while his exception number 2 is directed to that part of the answer which seeks to avoid the contract because in violation of the terms of the Interstate Commerce Act.

But if we were to regard this assignment, we are yet of opinion that the court committed no error in sustaining exceptions to section 2 of appellant's answer. That part of its answer reads: "Defendant further shows and avers that if the contract set out in said petition, claimed to have been entered into between plaintiff and defendant through its agent at Panhandle, whereby it was agreed that said stock should be routed by Fort Scott, Kansas, and that Fort Scott was the place of destination of said stock, and not Memphis, Tennessee, in order that said stock might be taken off the cars at Fort Scott and other stock there substituted in their stead to complete the journey, for which plaintiff was to receive compensation, or any other contract the evidence may show was made, which is not admitted but denied, then defendant says that said agent in making said contract exceeded his authority in so doing; that said contract was not only contrary to his authority and in violation of his duty to this defendant, but was also in violation of law, and

particularly in violation of sections 7 and 10 of the Interstate Commerce Act and also paragraphs B, C and D under said section 10, and therefore void, and can not form the basis of plaintiff's suit herein." As indicated in the original opinion, appellee's pleadings and evidence show that through an arrangement with a company of horse and mule buyers at Fort Scott he would have received from it a rebate for the use of the cars from that place to Memphis, Tennessee. Appellant was in no manner connected with this agreement for a rebate, and whether such an arrangement between the horse company and appellee was lawful, and therefore one which appellant was bound to respect, or not, can not affect the undoubted right of appellee to have his stock billed by way of Fort Scott, Kansas, with privilege of unloading and feeding there, upon paying the company's customary rates from point of origin to destination at Memphis. That his secret intention was to unload and sell at Fort Scott, and to allow the purchaser to complete the transportation under this contract, can not in the least affect the legality of his contract with appellant.

The motion for rehearing is in all things overruled.

*Motion overruled.*

Writ of error refused.