## HARTFORD FIRE INS. CO. v. GALVESTON, H. & S. A. RY. CO. *
### (No. 280—3518.)

(Commission of Appeals of Texas. Section A. April 5, 1922.)

**1. Insurance ⬳20—Foreign fire insurance companies must procure annual renewals of certificates of authority to do business.**

Under Rev. St. arts. 4497, 4862, 4943, 4960–4964, and Pen. Code 1911, arts. 642–645, relating to certificates of authority of foreign insurance companies, but not expressly prohibiting fire insurance companies from transacting any business except under a certificate of authority renewed annually, as is provided in the case of other insurance companies by Rev. St. art. 4761, it is necessarily implied that fire insurance companies shall procure the proper renewal of their certificates of authority annually, and that they are not authorized to transact any insurance business within the state without such certificate.

**2. Insurance ⬳24—Want of authority of company to do business does not prevent recovery by insured.**

Since the statutes do not declare a policy of insurance written without a certificate of authority to be void, nor prohibit any one from procuring such insurance, the insurance companies cannot defeat recovery on a policy issued by them because of the want of such certificate.

**3. Contracts ⬳138(2)—Right acquired by executed illegal contract will be protected.**

Where, as the result of the execution of an illegal contract, some new title or property right vests in one of the parties thereto, relief will not be denied in a suit which is brought, not for the enforcement of the illegal contract, but for a recovery upon or enforcement of the new right or title thereby acquired.

**4. Contracts ⬳138(7)—Defense of illegality is confined to parties to contract.**

As a general rule the defense of illegality of a contract is confined to the parties to the contract, and is not available to third parties to defeat a just claim against themselves.

**5. Insurance ⬳24—Foreign corporation not authorized to do business can enforce claim assigned to it by insured after its payment of the insurance.**

Where a contract of insurance by a foreign corporation not authorized to do business within the state had been fully executed by the payment to insured of the loss covered by the policy, and the assignment by the insured to the

---

insurance company of his claim against the carrier causing the loss, the company can maintain an action on the assigned claim or upon its right by subrogation to the rights of the insured.

**6. Insurance ⚖=20—Foreign company need not procure permit to do business required generally of foreign corporations.**

A foreign insurance company is not required to procure the permit to do business required by Rev. St. arts. 1314–1318, since article 1319, expressly exempts from the preceding articles corporations required by law to procure certificates of authority to do business from the Commissioner of Insurance and Banking.

**7. Insurance ⚖=36—Company authorized to insure shipment has implied authority to take assignment of claims against carrier.**

An insurance company which is authorized by its charter to insure goods against the hazards of inland transportation as permitted by Rev. St. art. 4862, has implied power to take for its indemnity an assignment of the claims of the owner of the insured property against the carriers causing the loss and to prosecute the same to judgment.

**8. Appeal and error ⚖=1040(6)—Error in sustaining exceptions to plea in abatement held cured by evidence establishing plaintiff's authority.**

Error, if any, in sustaining exceptions to a plea in abatement alleging plaintiff was not authorized by its charter to maintain the action was cured where plaintiff at the trial introduced in evidence its charter which showed that it had the necessary authority.

**9. Carriers ⚖=217(1)—Shipment of impoverished cattle held not contributory negligence precluding all recovery.**

The fact that the cattle were in a weak and impoverished condition before shipment due to the lack of food and water which could only be obtained by shipping them elsewhere does not show that a person exercising ordinary care for the safety of the cattle would have failed to ship them under the circumstances, so that the act of shipping them was not contributory negligence which barred all recovery for damages received by them during the shipment.

**10. Carriers ⚖=216—Not liable for damages resulting from poor condition of cattle.**

The weak and impoverished condition of cattle tendered to a carrier for shipment constitutes an inherent vice or defect, so that a carrier is not liable for any injury or damages resulting from such defect during the shipment, though it is liable for damages to such cattle directly and proximately resulting from its own negligence.

**11. Carriers ⚖=230(12)—Instructions held not to authorize damages to which shippers' negligence contributed.**

In an action for injuries to cattle during shipment, where the evidence showed that the cattle were weak and impoverished when shipped, instructions which limited recovery to injuries resulting from the negligence of the carriers were not erroneous as authorizing recovery for damages to which the carriers' negligence may have in any wise contributed, though in submitting the defensive issues growing out of the weakness and poverty of the cattle the court stated the carriers were not liable for damages not caused or contributed to by their negligence.

**12. Carriers ⚖=230(12)—Instruction as to liability for damage to impoverished cattle held correct.**

In an action for damages to cattle during shipment, where the evidence showed that the cattle were weak and impoverished when shipped, charges by the court limiting the liability of defendant to damages resulting from the negligence of the carriers, and excluding all injuries or damages resulting from the condition of the cattle when shipped, *held* to submit to the jury the correct basis upon which to estimate the damages for loss or injury to that class of cattle.

**13. Carriers ⚖=230(12)—Instruction held correctly to exclude damage caused by negligence of caretakers.**

Instructions permitting recovery only for damages to cattle during shipment, resulting from the negligence of the carrier, and requiring the jury to exclude all damages resulting from negligence by the shippers or caretakers, *held* correct and applicable.

**14. Carriers ⚖=230(4)—Evidence held not to show negligence of caretakers as a matter of law.**

In an action for injuries to cattle during shipment, evidence as to the number of cattle and bulls loaded in the various cars *held* not to show as a matter of law negligence by the shippers or caretakers, or that such negligence, if it did exist, caused or contributed to the entire damage sued for.

**15. Carriers ⚖=217(2)—Negligence of caretakers does not preclude recovery for damages not proximately contributed to.**

Though carriers of live stock are not liable for injuries caused by the negligence of shippers or caretakers, such negligence precludes recovery only for injuries or damage resulting therefrom in whole or in part, and does not preclude recovery for other damages caused by the negligence of the carriers to which the negligence of the shippers and caretakers did not proximately contribute.

**16. Damages ⚖=188(1)—Depreciation of personal property must be ascertained by money standard.**

The value of personal property lost or the extent of its depreciation by injury must be ascertained by a money standard from the evidence, and cannot be taken upon conjecture.

**17. Carriers ⚖=230(12)—Evidence held not to authorize instruction as to allowing for depreciation of cattle during shipment.**

Where the cattle for the injury to which a suit was brought against a carrier were transported in eight separate shipments, and plaintiff introduced evidence by the caretakers in charge of some, but not all, of the shipments as to the depreciation in value of the particular

⚖=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

shipment in charge of the witnesses, some of whom, however, did not qualify as knowing the market value at the place of destination, a charge that, if any of the cattle delivered alive at the point of destination were injured or damaged, and depreciated in value by the negligence of the carriers, to find for the plaintiff damages measured by the difference between the market value of such cattle in the condition in which they were delivered and in the condition they should and would have been delivered, was without sufficient basis in the evidence, and the giving thereof was reversible error.

**18. Depositions ☞65 — Cross-interrogatories as to attempts to influence witness held material.**

Where the testimony of the only witness as to depreciation of a shipment of cattle was taken by deposition, cross-interrogatories, intended to ascertain whether an attempt had been made to influence the testimony of the witness called for material matter, and the adverse party was entitled to have them answered.

**19. Depositions ☞83(3)—Should be suppressed for failure to answer material cross-interrogatories.**

Since the right to cross-examine a witness is a material one, and its denial upon a material matter is error, a deposition should be suppressed where the witness failed to answer material cross-interrogatories, though his failure was not willful, but was due to a negligent misapprehension of their materiality.

**20. Evidence ☞472(2)—Testimony as to depreciation of cattle during shipment does not invade jury's province.**

Testimony by the caretaker of cattle during shipment as to the average depreciation of such cattle in excess of what the depreciation would have been if they had been handled in the ordinary way was not objectionable as an opinion on a mixed question of law and fact which invaded the province of the jury.

**21. Evidence ☞497 — Witness who did not know market value of cattle, at destination cannot show depreciation during shipment.**

A witness who had stated he did not know the market value of the cattle at the place of destination is incompetent to give his opinion as to the depreciation of the cattle during shipment.

**22. Appeal and error ☞1050(1)—Erroneous admission of opinion by unqualified witness as to depreciation of cattle held material.**

The admission of an opinion by the only witness who testified as to the depreciation of a shipment of cattle, and who was unqualified to give an opinion as to such depreciation, was material error.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by the Hartford Fire Insurance Company against the Galveston, Harrisburg & San Antonio Railway Company. A judgment for plaintiff was reversed by the Court of Civil Appeals (220 S. W. 781), and judg-

ment rendered for the defendant, and both parties bring error. Judgment of the District Court and of the Court of Civil Appeals reversed, and cause remanded for new trial.

P. A. Wells, of Chicago, Ill., and J. A. Templeton, of Fort Worth, and J. F. Sutton, of Alpine, for plaintiff in error.

Baker, Botts, Parker & Garwood, of Houston, W. B. Teagarden, of San Antonio, and Wigfall Van Sickle, of Alpine, for defendant in error.

GALLAGHER, J. J. L. Borroum & Co. owned certain cattle in Brewster and Terrell counties, Tex. They shipped them over the Galveston, Harrisburg & San Antonio Railway and its connecting lines to points in Oklahoma. The Hartford Fire Insurance Company insured the owners of said cattle against certain hazards incident to their transportation, with the agreement that, upon the payment of the loss or damage, if any, so insured against, the claims of the owners against the carrier for such loss or damage should be transferred and assigned to it, and that it should be subrogated to all their rights in the premises. Losses were sustained, the insurance company paid such losses to the owners, and they transferred their claims against the carriers to it in accordance with their contract. This action was brought by the insurance company against the said railway company as initial carrier to recover such damages.

The railway company filed a plea in abatement as follows:

"Plaintiff is a foreign corporation chartered under and by virtue of the laws of the state of Connecticut, and it has no power or authority under its charter or permit to do business in this state, or under the laws of this state to make contracts such as formed the basis of this suit and has no power or authority to acquire and prosecute such causes of action as it asserts in this case against defendant."

The insurance company excepted to this plea on the ground that it constituted no defense to the cause of action, and on the further ground that such want of authority, if any, could be questioned only by the state. Those exceptions were sustained.

The insurance company introduced in evidence its charter from the state of Connecticut and various amendments thereto, showing that it had been granted authority to insure, among other things, against loss or damage caused by fire and the hazards of inland transportation. It also introduced in evidence a certificate from the Commissioner of Insurance and Banking of Texas authorizing it to pursue the business of fire, lightning, tornado, inland, marine, sprinkler, leakage, explosion, and war risk insurance within the state the year ending February 28, 1918. This certificate was dated June 25,

1917. It also introduced certificates from said Commissioner authorizing it to pursue such business for the years ending February 28, 1917, and February 28, 1919, respectively.

The contracts of insurance were made, the cattle covered thereby shipped, the losses thereon adjusted and paid to the owners and the claims assigned by them to the Insurance Company, and such claims presented to the railway company for payment between the 28th day of February and the 25th day of June, 1917.

The case was tried before a jury, verdict rendered in favor of the insurance company for $10,257, and judgment entered accordingly. The railway company appealed, and the Court of Civil Appeals for the Eighth District reversed the judgment of the trial court and rendered judgment for the railway company. 220 S. W. 781. Each of the parties applied for a writ of error, and both applications were granted and placed on the docket of the Supreme Court in the name of the insurance company as plaintiff in error and the railway company as defendant in error, and the parties will be so designated.

The Court of Civil Appeals held that the trial court erred in refusing a requested peremptory charge to find in favor of defendant in error. It based this holding on its finding that plaintiff in error, at the time the insurance which was the basis of the acquisition of the claim sued on was written, had no permit to do business of any kind in this state, and that in so writing such insurance, and so acquiring such claims without first obtaining such permit, it violated the statutes prescribing the terms on which foreign insurance companies are permitted to do business in this state, and that such claims, having been acquired in violation of such statutes, cannot be enforced in any of the courts of this state.

[1] Our statutes prescribe procedure by which a foreign insurance company may be authorized to pursue its business in this state. Article 4497 of the Revised Statutes requires a company applying for such certificate of authority to satisfy the Commissioner of Insurance and Banking that it has complied with the law, that its capital stock has been fully paid up, and that it has the required amount of capital and surplus to policy holders. On such showing it is made the duty of the Commissioner to issue a certificate of authority authorizing such company to transact such insurance business, but it is expressly provided that such certificate shall not authorize the transaction of business beyond the 28th day of February following. Article 4964 provides that before any such certificate shall issue the Commissioner, in addition to the other requirements provided by law, shall require an affidavit that the applicant has not violated any provision of article 4963 prohibiting foreign insurance companies authorized to do business in this state from writing insurance on property in this state, except through regularly commissioned and licensed agents in this state. Article 4943 makes it the duty of every insurance company to publish annually, within 30 days after its issuance, its certificate of authority. Article 4862 provides that it shall be lawful for any insurance company doing business under a proper certificate of authority (except life or health insurance companies) to insure all kinds of property against loss or damage by fire, and to take all kinds of insurance on goods, merchandise, or other property in the course of transportation, whether on land or water.

Article 644 of the Penal Code enumerates the acts which shall constitute any one doing the same the agent of the insurance company for which such acts are done, and article 645 declares that any person who shall so act as agent for any insurance company which has not complied with the laws and received a certificate of authority to do business in this state shall be guilty of a misdemeanor, and punished by a heavy fine and penalty, and imprisoned in the county jail for a period of three months unless such fine and penalty are sooner paid. Article 643 provides that any person who shall violate any of the provisions of the insurance laws of this state shall be punished by fine. Article 642 of the Penal Code and articles 4960 and 4961 of the Revised Civil Statutes are of similar import.

We have no statute providing in express terms that fire insurance companies shall not transact any business except under a certificate of authority from the Commissioner of Insurance and Banking, and that such certificate of authority shall be renewed annually on the same terms and conditions as the original certificate, as is provided in case of life, health, and accident insurance companies by section 46 of the act of 1909, which section now constitutes article 4761 of the Revised Statutes. We think, however, that the statutes applicable to fire insurance companies above quoted, properly construed, by necessary implication require fire insurance companies to procure the proper renewal of their certificates of authority annually, and that they are not authorized to transact any insurance business within this state without such certificate.

[2] There is nothing in our statutes on insurance declaring that insurance written without a certificate of authority shall be void, nor prohibiting any one from procuring or accepting such insurance, or penalizing any one for doing so. Therefore it does not necessarily follow that the insurance policies issued to the owners of the cattle in this case were void. It has been held that statutes requiring foreign insurance com-

panies before doing business in a state to comply with the requirements of the laws thereof are intended for the protection of its citizens who may deal with them, and that such statutes do not impose upon the insured the duty of seeing that the company and its agents have complied with the requirements of law. While such insurance companies and their agents are subject to the penalties imposed, and while it is generally held that they cannot in such cases enforce the collection of premiums by suit, when they have collected such premiums and delivered their policies, according to the great weight of authority the insured is entitled to recover on the policy in event of loss. 9 Fletcher, Ency. Corp. § 5953, p. 10064; 14 R. C. L. p. 866; Home Forum Benefit Order v. Jones, 20 Tex. Civ. App. 68, 48 S. W. 219, 222 (writ refused); Swan v. Ins. Co., 96 Pa. 37; Insurance Co. v. Simons, 96 Pa. 520; Ganser v. Ins. Co., 34 Minn. 372, 25 N. W. 943; Insurance Co. v. Pennsylvania Co., 134 Ind. 215, 33 N. E. 970, 20 L. R. A. 405, 411; Insurance Co. v. Curran, 8 Kan. 9; Berry v. Life Indemnity Co. (C. C.) 46 Fed. 439, affirmed, 50 Fed. 511, 1 C. C. A. 561; Diamond Plate Glass Co. v. Fire Ins. Co. (C. C.) 55 Fed. 27; Marshall v. Ins. Co., 78 Hun, 83, 29 N. Y. Supp. 334; Hoge v. Insurance Co., 138 Pa. 66, 20 Atl. 939; Insurance Co. v. McMillen, 24 Ohio St. 67; Strampe v. Ins. Co., 109 Minn. 364, 123 N. W. 1083, 26 L. R. A. (N. S.) 999, 134 Am. St. Rep. 781; Pennypacker v. Ins. Co., 80 Iowa, 56, 45 N. W. 408, 8 L. R. A. 236, 20 Am. St. Rep. 395; Ins. Co. v. Rust, 141 Ill. 85, 30 N. E. 772; Ins. Co. v. Bledsoe, 52 Ala. 538.

Plaintiff in error was bound to pay the losses incurred in shipping the cattle to the owners, according to the terms of the policies. This it did, and thereby complied with and discharged its obligation to them, and received from them specific assignments of, and became subrogated to, their claims against the carriers. When this was done the illegal contract was completely executed. Each of the parties thereto had done all that was ever agreed or contemplated to be done for the benefit of the other. There was nothing left undone between them to be enforced by an action in the courts. As a result of the execution of this contract, plaintiff in error became invested with the actual title to and ownership of the claims for damages which accrued to the owners on account of the manner in which defendant in error handled the cattle.

The enforcement of these claims against defendant in error was not in any sense the enforcement of the original contract of insurance. They did not originate in such contract. They had their origin in the failure of the carriers to discharge the duty they owed to the owners of the cattle shipped over their lines. They were valid and enforceable against defendant in error in the hands of the owners. They were assignable. Were they rendered invalid and unenforceable, and was defendant in error relieved from liability therefor because they were transferred to plaintiff in error in connection with and in consideration of the payment of the losses covered by its said policies of insurance?

[3] It frequently happens as a result of the execution of an illegal contract that in consideration thereof some new title to property or some new property right vests in one of the parties to such contract. When such contract has been fully executed, and suit is brought, not for the enforcement thereof, but for a recovery upon or enforcement of the new title or right thus acquired relief will not be denied. Hall v. Edwards (Tex. Com. App.) 222 S. W. 167; Wegner v. Biering, 65 Tex. 506; Floyd v. Patterson, 72 Tex. 202, 10 S. W. 526, 13 Am. St. Rep. 787; De Leon v. Trevino, 49 Tex. 88, 30 Am. Rep. 101; Brooks v. Martin, 2 Wall. 70, 17 L. Ed. 732. In Wegner v. Biering, supra, the court said:

"When the contract has been executed without the aid of courts by the voluntary acts of the parties, the profit or estate * * * is not contaminated."

[4] The general rule is that the defense of illegality is confined to the parties to the contract and is not available to third parties to defeat a just claim against themselves. 13 C. J. 508, § 458; So. Kan. Ry. Co. v. Cox, 43 Tex. Civ. App. 79, 95 S. W. 1124 (writ refused); Gould v. Leavitt, 92 Me. 416, 43 Atl. 17; Farmers' & Millers' Bank v. Detroit & Milwaukee Ry. Co., 17 Wis. 383; Wood v. Erie Ry. Co., 9 Hun, 648, affirmed 72 N. Y. 196, 28 Am. Rep. 125; California Cured Fruit Ass'n v. Stelling, 141 Cal. 713, 75 Pac. 320.

In So. Kan. Ry. Co. v. Cox, supra, it has been held that a carrier could not defend against an action for damages for misrouting a shipment of live stock and failing to carry it by and unload it at an intermediate station according to contract, on the ground that the purpose in so unloading was to sell the stock at such intermediate station and sell the use of the cars to another for the shipment of other stock to destination in violation of the provisions of the Interstate Commerce Act (U. S. Comp. St. § 8563 et seq.), because the carrier was not a party to the agreement for the unlawful rebate or profit.

In Gould v. Leavitt, supra, it was held that recovery could be had on a valid note by a holder who received it in satisfaction of an illegal debt.

In Farmers' & Millers' Bank v. Detroit & Milwaukee Ry. Co., supra, it was held that the carrier could not defeat an action for damages to goods resulting from its negligence in transporting the same on the ground that the corporation shipping such goods could not lawfully acquire title thereto.

[5] Applying the principles of law enunciated in the authorities above cited to the facts of this case, we think that plaintiff in error was entitled to maintain an action on the claims for damages sued on herein, notwithstanding it acquired such claims in settlement of losses under a policy or policies issued by it without a certificate authorizing it to do business in this state. In fact, it has been frequently held that insurance companies paying losses under policies issued by them without complying with the requirements of the laws of the state in which the property insured was situated were subrogated to the cause of action arising in favor of the insured against the party whose actionable wrong caused the loss, and that they could maintain an action thereon in the courts of such state. 4 Cooley on Ins. p. 3896; 14 R. C. L. pp. 866, 867; St. L., I. M. & S. Ry. Co. v. Commercial Union Ins. Co., 139 U. S. 223, 11 Sup. Ct. 554, 35 L. Ed. 154; Phœnix Ins. Co. v. Pennsylvania Co., 134 Ind. 215, 33 N. E. 970. 20 L. R. A. 405: The Manistee, 5 Biss. 381, Fed. Cas. No. 9027, affirmed 7 Biss. 35, Fed. Cas. No. 9028; Lumbermen's Mutual Ins. Co. v. Kansas City, Ft. S. & M. Ry. Co., 149 Mo. 165, 50 S. W. 281, 285; Marine Ins. Co. v. St. L., I. M. & S. Ry. Co. (C. C.) 41 Fed. 643.

[6] Defendant in error contends that plaintiff in error cannot recover in this case because its petition discloses that it is a foreign corporation, and that, not having alleged and proved that it had a permit to do business in this state under the provisions of articles 1314 to 1318, inclusive, of the Revised Statutes, it was not entitled to maintain an action in any court in this state. It has been held that such allegation and proof is necessary in suits by foreign corporations to which such articles are applicable. Tabor v. Interstate B. & L. Ass'n, 91 Tex. 92, 40 S. W. 954. Article 1319 of the Statutes expressly exempts from the application of the preceding articles corporations required by law to procure certificates of authority to do business from the Commissioner of Insurance and Banking. Plaintiff in error was such a corporation, and was therefore exempt from the provisions of the articles of the statute so relied on. We have already considered the effect of its failure to procure a certificate of authority from the Commissioner of Insurance and Banking. Such failure on its part did not prevent its maintaining this action.

[7] Defendant in error in its application complains of the holding of the Court of Civil Appeals that the action of the trial court in sustaining an exception to its plea in abatement was immaterial in view of the fact that plaintiff in error introduced its charter in evidence, and also the certificate under which it claimed authority to issue the policies of insurance involved in this case. The char-ter so introduced in evidence with its amendments expressly authorized plaintiff in error to issue policies of insurance against fire, and against the hazards of inland transportation. Article 4862 of Rev. Stats. authorizes insurance companies to insure against fire and to issue all kinds of insurance on property in course of transportation. The action of plaintiff in error in issuing the policies of insurance involved in this case was not ultra vires. Having issued its policies of insurance, and having become liable thereon, and having discharged such liability, it had the implied power to take for its indemnity an assignment of the claims of the owner against the carriers, and prosecute the same to judgment, such implied power being reasonably necessary, or at least appropriate, to the exercise of the express powers granted by its charter. Bowman Lumber Co. v. Pierson, 110 Tex. 543, 545, 221 S. W. 930, 11 A. L. R. 547.

[8] In this state of the record defendant in error was not injured by the action of the trial court in sustaining exceptions to its plea in abatement, and the Court of Civil Appeals did not err in so holding.

There was testimony tending to show that the cattle shipped had suffered from lack of sufficient water and pasturage, and that a number had been, and were being, lost from these causes at and prior to the time of shipment; that the cows in the shipment especially were impoverished, and some so weak that they had to be helped up when they were down; that in addition to this some of the cows were heavy with calf, and some were calving at the time; that unusually heavy losses were reasonably anticipated as a result of shipping them in that condition, but that greater losses would probably be suffered unless they were sent some place where sufficient water and pasturage could be procured.

There was also testimony tending to show that one shipment of the cattle was in a wreck, and that two cars left the track, and that the cattle in them were all lying down piled up upon each other; that the other cars in that shipment were all shaken up and the cattle down; that all the shipments were subjected to unnecessary delays and rough handling; that a great number of the cattle died, and that those that survived were more or less injured and depreciated in value.

The court in paragraph 8 of his charge authorized a verdict for the insurance company for such loss, damage, and depreciation only as was the direct and proximate result of negligence on the part of the railway company, which paragraph is as follows:

"(8) If you should find and believe from the evidence that the defendant, or its connecting carriers, in handling and transporting either or all of the shipments of cattle described in the plaintiff's petition, was negligent in any of the

particulars referred to in the third, fourth, and fifth paragraphs of this charge, and if you should further find and believe from the evidence that as the direct and proximate result of such negligence said cattle, or some of them, were injured and damaged, and that some of them died and were lost as the direct and proximate result of such negligence, then you are instructed, if you so believe and find, to find for plaintiff and against the defendant for such damage as you may find was the direct and proximate result of such negligence."

The court in paragraph 10 of his charge authorized a verdict for the insurance company for any increased loss. and damage caused by the negligence of the railroad company, which paragraph is as follows:

"(10) In connection with the foregoing instruction, you are further instructed that, if you should find and believe from the evidence that the cattle in question were weak and poor, and that they suffered a loss in shipment because of their weak and poor condition, yet if you further find and believe from the evidence that the loss occasioned to such cattle was increased by the negligence of the carriers more than it otherwise would have been, then you are instructed that, in so far as such loss and damage was increased by such negligence, the plaintiff would be entitled to recover of the defendant such increased loss and damage, if any such there was."

The court restricted the right of the insurance company to a verdict for damages by paragraphs 9 and 13 of his charge, which paragraphs present defensive theories relied on by the railroad company, as follows:

"(9) The defendant would not be liable to the plaintiff for any such injury or damage to said cattle as you may find resulted from the inherent weakness or poverty of the cattle, or from their inability to stand the shipments to their destination, and which was not caused or contributed to by the negligence of the carriers; neither would said defendant be liable to the plaintiff for any such damage to said cattle as you may find resulted from any want of care of either the shippers of the cattle or of the caretakers who accompanied same while in transit, if you find there was any such want of care and consequent damage."

"(13) You are further instructed in this connection that, in estimating the damages, if any, which you find for plaintiff, you should be careful to exclude from your estimate any and all such damage, if any, as you find resulted to said cattle from their weak and impoverished condition, and which damage was not caused or contributed to by the negligence of the carriers, or from any negligence on the part of the shippers or caretakers of said cattle."

These charges discriminated between loss and damage to the cattle resulting from their weak and impoverished condition, and loss and damage resulting from negligence, if any, of the shippers and caretakers. The railway company was protected by these charges from recovery against it for damages that resulted solely from the inherent weakness or poverty of the cattle, and made responsible only for such additional damages to poor and weak cattle as resulted from its own negligence, or the negligence of its connecting carriers.

[9] Defendant in error contends that the act of shipping the cattle in such condition was negligence on the part of the shippers as a matter of law; that such negligence contributed to the injuries sustained by such cattle in the course of transportation; and that it should have been completely absolved from liability, regardless of any negligence on the part of itself or its connecting carriers in transporting the cattle, and that such charges were erroneous in authorizing any recovery at all.

We cannot agree to this contention. We do not think that it can be said that a person exercising ordinary care for the safety of such cattle would have failed or refused to ship them under the circumstances in which they were situated as above recited. Such being the case, the act of shipping was not in itself negligence.

[10] While the railway company was not in any way responsible for such condition, its duty to exercise ordinary care in transporting the several shipments was not abrogated thereby. Such weak and impoverished condition of the cattle, however, constituted an inherent vice or defect, a want of vitality, and for any injury or damage resulting therefrom it is not liable. 10 C. J. pp. 123–125, §§ 151–153, inclusive, and notes. The railway company is liable, however, for all damages to such class of cattle as directly and proximately resulted from its own negligence and the negligence of its connecting carriers, and such damages only were authorized to be recovered by the charges under consideration.

[11] The defendant in error contends that those charges authorized a recovery against it not only for all damages caused by its negligence and the negligence of its connecting carriers, but also for all damages to which such negligence may have in any wise contributed. We do not think so. The expression, "caused or contributed to by the negligence of the carriers," is used only in submitting defensive issues growing out of the weakness and poverty of the cattle. The jury were instructed by these charges that the railway company was not liable for damages to weak and impoverished cattle not caused or contributed to by the negligence of the carriers, and they were further instructed to exclude from their estimate of damages, if any, all damages to such cattle not "caused or contributed to by the negligence of the carriers." These paragraphs should be read in connection with paragraph 10 of the charge, which authorized the jury to find for the insurance company for any increased

damages to such cattle which resulted from the negligence of the carriers. When so read we think that the charges authorized a recovery in favor of the insurance company for only such damage as resulted directly and proximately from the negligence of the carriers, and, in case of weak and impoverished cattle which suffered injury or damage on account of their condition, for such damages only to the extent that the negligence of the carriers contributed to produce injury or damage thereto.

[12] We think these charges, properly construed, are not subject to the criticisms so urged, and that, considered together, they gave the jury the correct basis upon which to estimate damages for loss or injury to that class of cattle. M. P. R. R. Co. v. Fagan, 72 Tex. 127, 133, 9 S. W. 749, 2 L. R. A. 75, 13 Am. St. Rep. 776; G. H. & S. A. Ry. Co. v. Powers, 54 Tex. Civ. App. 168, 117 S. W. 459, 461 (writ refused); T. & P. Ry. Co. v. Dawson, 24 Tex. Civ. App. 240, 78 S. W. 235, 236.

There were 85 cars of cattle in the aggregate in the several shipments. One bill of lading shows that 4 cars were heavily loaded, and that one car contained a loose bull. There was testimony that a few loose bulls were found in 10 or more cars when inspected en route. We are not cited to any evidence that the caretakers did not discharge their duties as fully as circumstances permitted. Defendant in error contends that this testimony showed contributory negligence on the part of the shippers and caretakers as a matter of law to such an extent as to entirely defeat a recovery, and that the charges complained of were on that account erroneous in authorizing any recovery at all.

[13] We have heretofore called attention to the fact that paragraph 8 of the charge instructed a recovery for such damages only as were the direct and proximate result of the negligence of the carriers. In paragraph 9 of the charge the court instructed the jury that defendant was not liable for any damage that resulted from want of care on the part of the shippers or caretakers who accompanied the same while in transit, and in paragraph 13 of said charge he instructed the jury in estimating damages, if any, to be careful to exclude from their estimate all damages resulting from any negligence on the part of the shippers or caretakers of the cattle. These charges recognized the well-established rule that common carriers of live stock are not liable for injuries and damages resulting from the negligence of the shippers. 10 C. J. p. 114, § 135, and notes; M., K. & T. Ry. Co. v. Chittim, 24 Tex. Civ. App. 599, 60 S. W. 284, 286. They protected the railway company from recovery for any such injuries and damage. We think these charges, as far as they went, announced correct propositions of law applicable to the evidence in the case.

[14, 15] We cannot say as a matter of law that such negligence of shippers and caretakers existed, or, if it did exist, that it caused or contributed to the entire damage sued for. Though there may have been negligence on the part of the shippers and caretakers in the matters above recited, such negligence would only preclude a recovery for injuries or damage resulting therefrom in whole or in part. It would not preclude a recovery of other damages caused by the negligence of the carriers and not proximately contributed to thereby. M., K. &. T. Ry. Co. v. Chittim, 24 Tex. Civ. App. 599, 60 S. W. 284, 286 (writ refused); G. H. & S. A. Ry. Co. v. Crowley (Tex. Civ. App.) 214 S. W. 721, 724. The assignments under consideration are overruled. The case will, however, be reversed on other grounds, and, if the issue of contributory negligence is raised by the evidence on another trial the court should, if requested, give a proper charge thereon in accordance with the rule announced in the authorities above cited.

Defendant in error complains of the charge of the court because it instructed the jury, in event they found that any of the cattle delivered alive at the point of destination were injured or damaged, and depreciated in value as a direct and proximate result of negligence on the part of defendant in error, or its connecting carriers, to find for the plaintiff in error damages measured by the difference between the market value of such cattle in the condition in which they were delivered, and in the condition in which they should and would have been delivered but for such negligence. This complaint was based on its claim that there was no competent evidence on such measure of damages. The cattle were transported in eight separate shipments. The first shipment consisted of 14 cars of cattle, containing 469 head; the second shipment consisted of 12 cars, containing 399 head; the third shipment consisted of 16 cars, containing 479 head; the fourth shipment consisted of 9 cars, containing 265 head of cattle and 10 head of yearlings and calves; the fifth shipment consisted of 4 cars, containing 94 head of cattle and 65 head of yearlings and calves; the sixth shipment consisted of 4 cars, containing 119 head; the seventh shipment consisted of 4 cars containing 200 head; the eighth and last shipment consisted of 22 cars, containing 652 head. All these shipments except the eighth, or last, were loaded at Marathon, Tex., and all consigned to owners at Blackland, Okl., except the second shipment, which was consigned to owners at Meyers, Okl. The eighth shipment was loaded at Dryden, Tex., and consigned to owners at Blackland, Okl.

Crawford L. Moore was caretaker of the

first shipment. He left the cattle in a pen at Blackland, and returned home. He testified that he did not know anything about market values or conditions at either Marathon or Blackland on this class of cattle. He was permitted, over the objection of the railway company, to testify that in his opinion the cattle that survived the trip would average a depreciation of $2.50 a head more than they would have depreciated if handled in transit in the ordinary way. His answers referred to the first shipment alone.

Sam C. McAuley was caretaker of the sixth shipment. He qualified as a witness on values both at Marathon and Blackland. He testified that in his opinion the entire shipment was damaged from $1.50 to $3 per head in excess of what the damage or depreciation would have been if transported in the usual manner. His answers referred to this shipment only.

Will Ellis, Dan Westbrook, and perhaps others, testified to depreciation in value of the surviving cattle in several other shipments. There was no testimony, however, except the testimony of Crawford and McAuley which gave any estimate of the amount of such depreciation, and each of these witnesses expressly limited the application of his estimate of depreciation to the shipment in his charge.

The court in his charge authorized recovery for depreciation in value of all of the surviving cattle, in all eight shipments, and also authorized a recovery of the value of the cattle which died or were lost in transit. There was a general verdict for damages in a lump sum.

[16, 17] The value of personal property lost or the extent of its depreciation by injury must be ascertained by a money standard from evidence, and cannot be taken upon conjecture. 3 Sutherland on Damages (4th Ed.) § 933; T. & P. Ry. Co. v. Prunty (Tex. Sup.) 230 S. W. 396; Sabine Land & Improvement Co. v. Perry (Tex. Civ. App.) 54 S. W. 327, 328; Dickerson v. S. A. U. & G. Ry. Co. (Tex. Civ. App.) 170 S. W. 1045, 1046; Latham v. Snell (Tex. Civ. App.) 176 S. W. 917. The same rule has been applied with reference to recovery for lost time in personal injury cases where the value of such time was not proved. I. & G. N. Ry. Co. v. Simcock, 81 Tex. 503, 504, 17 S. W. 47; T. & P. Ry. Co. v. Bigham (Tex. Civ. App.) 30 S. W. 254, 255; T. & P. Ry. Co. v. Goldman (Tex. Civ. App.) 51 S. W. 275. The instruction complained of was without sufficient basis in the evidence, and the giving of the same under the facts of this case reversible error. I. & G. N. Ry. Co. v. Simcock, 81 Tex. 503, 504, 505, 17 S. W. 47.

Plaintiff in error took the deposition of Dan Westbrook. This witness was one of the caretakers in charge of the eighth shipment. The other caretaker was not examined. Westbrook's testimony was material.

Defendant in error propounded 56 cross-interrogatories to him. He answered 12 of them, and, thinking the remainder applied exclusively to other shipments about which he knew nothing, failed to answer them. Of these unanswered cross-interrogatories 19 were in fact applicable to said eighth shipment, and 5 were intended to ascertain whether any attempt had been made to influence his testimony, and whether his answers were in his own words, or whether he had been aided by others in selecting the language used in his answers. Of the 19 cross-interrogatories applicable to said shipment some were answered in substance in his prior answers, some referred to matters established by testimony from other sources practically uncontradicted, and some were appropriate to develop additional facts concerning the shipment testified about. There was nothing to indicate that the failure to answer was willful, but such failure seems to have resulted from an honest but negligent mistake as to the applicability or importance of the unanswered cross-interrogatories.

Defendant in error moved to suppress the deposition of this witness on account of his failure to answer such cross-interrogatories. The court overruled the motion, and the deposition was read in evidence over the objection of defendant in error.

[18] The right to cross-examine a witness is a valuable one, and its denial upon a material matter is error. The unanswered cross-interrogatories applicable to the facts were appropriate to elicit material evidence. The defendant in error was also entitled to the information sought with reference to whether any attempt had been made to influence or coach the witness with reference to either the substance or language of his answers. The answers to such cross-interrogatories might have been sufficient to suppress the deposition, or might have been of a character to affect the weight of the evidence of the witness before the jury. Greening v. Keel, 84 Tex. 326, 328, 19 S. W. 435; 18 C. J. p. 692, § 219, pages 695 to 697, §§ 228 to 232, inclusive. Cross-examination affords an appropriate and sometimes the only practical way of ascertaining facts of the character so inquired about. We do not mean to intimate that there is anything in the record in this particular case tending to show that there was any attempt by anybody to either approach or influence the witness. We merely hold that the right to the information sought is valuable to the party against whom the deposition may be used, and that appropriate cross-interrogatories of that character are material.

[19] It is well settled in this state that a failure to answer material cross-interrogatories requires the suppression of the whole of such deposition. We think the refusal of

the trial court to suppress the deposition of this witness on proper motion was an erroneous exercise of discretion. N. Y. T. & M. Ry. Co. v. Green, 90 Tex. 257, 264, 38 S. W. 31; T. & N. O. Ry. Co. v. Crowder, 70 Tex. 222, 224, 7 S. W. 709.

[20] Crawford L. Moore was caretaker in charge of the first shipment. His testimony was taken by deposition and read in evidence by plaintiff in error. He testified that he "did not know anything about market values or conditions at either Marathon or Blackland on this class of cattle." His testimony to the effect that in his opinion the cattle that survived the shipment "would average a depreciation of $2.50 per head more than they would have depreciated if handled in the ordinary way of handling freight trains," was read to the jury over objection of defendant in error. The grounds of objection were that his answer involved an opinion on a mixed question of law and fact, and invaded the province of the jury, and that it was shown by the witness that he knew nothing of the market value of the animals, and was not qualified to testify on that subject. The first objection was properly overruled. T. & P. Ry. Co. v. Prunty (Tex. Sup.) 230 S. W. 396.

[21, 22] The second objection should have been sustained. The witness, being wholly unacquainted with the value of such cattle at the place of destination was not qualified to express an opinion on the amount of depreciation in value. Ry. Co. v. Prunty, supra; Railway v. Kapp (Tex. Civ. App.) 117 S. W. 904; Railway v. Barnett, 27 Tex. Civ. App. 498, 66 S. W. 474, 477; Railway v. Staton (Tex. Civ. App.) 49 S. W. 277, 278. His testimony was the only evidence offered on the subject of depreciation in value as applied to this shipment and its admission over the last objection was material error. Railway v. Dilworth, 95 Tex. 327, 332, 67 S. W. 88.

Various other assignments are presented by defendant in error in its application. They have all been considered, and we are of the opinion that the disposition made of these questions in the Court of Civil Appeals was correct, and they are therefore overruled.

We recommend that the respective judgments of the district court and the Court of Civil Appeals be reversed, and the cause remanded to the district court for a new trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court. We approve the holding of the Commission of Appeals on the question discussed in its opinion.